M. A. TORRENCE ET AL. v. CITY OF CHARLOTTE AND CHARLOTTE PARK AND TREE COMMISSION.

(Filed 19 November, 1913.)

1. Corporations—Condemnation—Fee Simple—Nonuser—Reversion —Interpretation of Statutes.

The Legislature has the power to authorize a waterworks company to acquire a fee in lands, and where the charter of such corporation gives the right to condemn land "to its use in the manner now provided for the condemnation of lands for railroads and other public uses," and was granted when a statute (sec. 20, ch. 62, Battle's Revisal) was in force, providing "the lands assessed and condemned . . . shall be vested in the company in fee simple," the charter will be construed, under the provision of the statute, as giving the right to the company to acquire the land in fee, in condemnation proceedings.

2. Corporations — Waterworks—Condemnation—Fee—Nonuser—Reversion.

Where it appears in a proceeding by a waterworks company to condemn lands, that the price assessed and paid for the lands thereunder was the full value of the fee, which the proceedings purported to transfer, the lands do not revert to the original owner or heirs at law for nonuser of the lands for the purposes for which they were acquired.

3. Same — Statutes—Substitution of Uses—Interpretation of Stat-
   utes—Constitutional Law.

   A waterworks company having acquired lands under condem-
   nation proceedings, authorized by its charter, and thereunder
   paid the full value of the fee, thereafter conveyed them to the
   city for the purpose of a public park, with authority under a
   legislative enactment for the change in the use of the lands
   indicated: *Held*, that should the waterworks company not have
   acquired the fee, the Legislature had the power to authorize the
   substitution of the one public use for the other, and the lands
   did not revert to the original grantor, or his heirs at law, for
   nonuser of the lands for the original purpose.

APPEAL by plaintiffs from *Webb, J.,* at March Term, 1913, of
MECKLENBURG.

*F. I. Osborne and Maxwell & Keerans for plaintiffs.*
*Cansler & Cansler, P. C. Whitlock, and Chase Brenizer for
defendants.*

CLARK, C. J. The plaintiffs, heirs at law and devisees of the
original owners of the lands, brought this action against the
city of Charlotte and the Charlotte Park Commission to recover
9 acres of land on which was formerly located the waterworks
pumping station and reservoir of the city, upon the ground that
the defendants having ceased to use said property for water-
works purposes, the title thereto had reverted to the plaintiffs.
The answer denied the plaintiffs' right to recover upon the
grounds:

1. That by virtue of the condemnation proceedings the Char-
lotte Waterworks Company, under whom the defendants claim,
acquired an *indefeasible fee* in said lands.

2. But even if the grantor of the defendants did not acquire
an indefeasible fee in the lands in question, still there was no
*reverter* to the plaintiffs, because the defendants were expressly
authorized by the General Assembly to *discontinue* the use of
said lands for waterworks purposes and to convert them into a
public park.

Under chapter 90, Private Laws 1881, the Charlotte Water-
works Company was authorized to purchase or condemn lands

for its purpose, and the land was taken under condemnation proceedings. The report, which was confirmed by the court, set forth that $112.50 per acre was the full value thereof, which the parties further agreed was "the *full market value* of said lands."

By virtue of chapter 32, Laws 1905, the defendant Charlotte Park Commission was created and a deed from the Waterworks Company was executed to it, conveying said lands upon condition that they should be perpetually used for a "public park for the white people."

The plaintiffs contend that the waterworks under its charter could acquire only an easement in the lands for waterworks purposes, and that, consequently, on the property ceasing to be used for that purpose it reverted to the plaintiffs. The contention of the defendants is that the Waterworks Company had the power to acquire by condemnation or otherwise, and under the condemnation proceedings they did acquire and paid for an indefeasible fee simple in the said lands; and that if this was not so, that the Legislature had the right to authorize the use of the lands to be changed from one public purpose (waterworks) to another (public park), which prevented any forfeiture for nonuser or misuser.

The Legislature had the power to authorize the Waterworks Company to acquire an indefeasible fee simple. *R. R. Co. v. Davis,* 19 N. C., 467; 2 Lewis Em. Dom. (3 Ed.), sec. 448; Nichols Em. Dom., sec. 291; *Tellen v. Medford,* (Mass.) 108 Am. St., 459, this last citing Cooley Const. Lim. (7 Ed.), 809 and notes thereto.

The Legislature having provided in the charter of the Waterworks Company that it should have the right to condemn land "to its use in the manner now provided by law for the condemnation of lands for railroad or *other public uses,*" this language must be referred back to sec. 20, ch. 62, Battle's Revisal, then in force, which provided "the land assessed and condemned . . . shall be vested in the company in fee simple."

The judgment confirming the report of the commissioners in the condemnation of this land for the waterworks stated that

the land had been assessed "the *full value* thereof at the sum of $996.75," being, as already said, $112.50 per acre. It is well settled that when the city acquired an indefeasible fee in the latter for waterworks, there could be no forfeiture for nonuser or misuser. 2 Lewis Em. Dom., 1500. In fact, no authority should be necessary for that purpose. To same effect, 3 Dillon Mun. Corp. (5 Ed.), 1620.

There are numerous decisions that when a common carrier acquires a "right of way" by condemnation, it acquires only an "easement" for that purpose. *R. R. v. Sturgeon,* 120 N. C., 225, and citations thereto, in Anno. Ed. When there is a nonuser, the land in such cases does not *revert,* but the easement simply ceases to exist. More than this, the common carrier cannot call for the full width of its right of way, notwithstanding its condemnation of, and payment for, the same, until actually needed for its purposes. *R. R. v. Sturgeon, supra.* But this has no application where the condemnation is for a purpose requiring the entire ownership, as for waterworks, and especially when the judgment in such proceedings, and the agreement of the parties, show that "full market value" was paid.

But if it were conceded that the Waterworks Company acquired only an easement, it was within the authority of the Legislature to authorize the city to change the public use from waterworks to that of a public park, the latter being not less advantageous or more burdensome to the contiguous landowners. This was fully considered and decided in *Bass v. Navigation Co.,* 111 N. C., 446, in which the Court said (p. 449): "The law applicable in our case is, by its terms, retrospective, and we do not think that the Legislature transcended the limits of its powers in providing for the substitution of one public agency instead of another (in that case the change in the use of the canal from navigation to manufacturing purposes), and thereby postponing the possibility of the reverter, if it existed at all. That such contingent claim to the reversion is, at best, where admitted to exist, only an expectancy, defeasible at the will of the State, is made more apparent when we recall the admitted principle that it rests with the sovereign to insist upon the for-

feiture for failure on the part of the corporation to comply with its charter. And if in our case the State had not moved, and should never move, in the matter, there could be no dissolution."

In *Malone v. Toledo,* 28 Ohio State, 655, the Court held, in an able and exhaustive opinion: "Whatever the estate is, or however denominated, whether fee or easement, as to all property appropriated under the exercise of the law of eminent domain, we think that the real estate so appropriated for one particular public use may by legislative authority be applied to another public use, and this is not necessarily an abandonment, nor is it a forfeiture of the public interest."

In *Strock v. East Orange,* (N. J.) 77 Atlantic, 1051, it is said: "When land has been acquired for a public use, as for a park, by condemnation and payment to the owner of its full value, it seems to be competent to authorize the municipality so acquiring it to use it for other purposes."

Besides the explicit decision in *Bass v. Navigation Co.,* above cited, in a later case, *Wilson v. Leary,* 120 N. C., 90, on the question of a reverter of lands upon the dissolution or extinction of a corporation, it was held, expressly citing and overruling *Fox v. Horah,* 36 N. C., 58, as follows: "Upon the dissolution or extinction of a corporation for any cause, real property conveyed to it in fee does not revert to the original grantors or their heirs; and its personal property does not escheat to the State; and this is so whether or not the corporation was limited by its charter or general statute."

This has been cited and approved in *Broadfoot v. Fayetteville,* 124 N. C., 485, which called attention to the fact that *Fox v. Horah* had been overruled. It had indeed been previously overruled, in effect, in *VonGlahn v. DeRosset,* 81 N. C., 467. In 2 Kent Commentaries, 307, note, it is said of the doctrine of reverter: "This rule of the common law has in fact become obsolete and odious." In 5 Thompson Corp., sec. 6730, it is said that a reverter applies only to a restricted class of corporations; as, for instance, where a railroad company acquired a right of way as an easement, and on the cessation of such ease-

ment the land is relieved of that burden. Land taken for water-works is for a "public use." That taken for a railroad is taken for a "*quasi*-public use" only.

In Gray on Perpetuities, secs. 44-51, is shown that "My Lord Coke's doctrine of reverter rested on the dictum of a fifteenth century judge (*Mr. Justice Choke* in the *Prior of Spalding's case,* 7 Edward IV., 14 (1467), and is contrary to the only case really deciding the point, *Johnson v. Norway,* Winch., 37 (1622), though Coke's statement has often been referred to as law." The above is quoted from the opinion in *Wilson v. Leary,* 120 N. C., 93, which states that the modern doctrine is that "upon the dissolution of a corporation the title to the real property does not revert to the original grantors nor their heirs," citing 5 Thompson Corp., sec. 6747; *Owen v. Smith,* 31 Barb., 641; *Towar v. Hale,* 46 *ib.,* 361.

Affirmed.