This is a petition to rehear this case, reported 161 N.C. 531. The facts are there stated, with a map of the location, and *Page 381 
it is not necessary to repeat them. It is sufficient to say, as there stated, that this is a "proceeding by the plaintiff to condemn a right of way across the track of the defendant in order to extend a spur track to the Lumberton Cotton Mills and the Kingsdale Lumber Company plant on the south side of the defendant's track and to make connection with the track of Raleigh and Charleston Railroad Company." After full consideration, we held that "the plaintiff had the right conferred by its character and under Rev., 2556 (5) and (6), to condemn and acquire a right of way across the road of another company to construct a spur track to manufacturing plants or other business enterprises (426) for the handling of their freight." On the former hearing, the defendant's brief said: "This is the only question presented."
The petitioner on rehearing does not assign error in this respect, but contests the correctness of the former decision on two grounds:
1. Because the judge found that the extension of the spur track to the two industrial plants on the south side of the defendant track and to make connection with the Raleigh and Charleston Railroad was not necessary.
But this was not a question within the scope of his Honor's jurisdiction. When the General Assembly authorized the construction of the plaintiff railroad, with the power to construct spur tracks, that was the decision of a political question (Ruffin, C. J., in R. R. v. Davis, 19 N.C. at p. 465), which the courts of course cannot review. The power conferred embraced the right of eminent domain and everything incidental for executing the powers granted by the charter. It may be that the construction of the railroad between the points named in the charter and the construction by it of spur tracks to industrial plants or the other extensions authorized did not seem necessary to many people. But the Legislature settled that matter when it granted the charter. If the company sees fit to put up the money, it takes the risk of the necessity of the work.
The General Assembly by granting the plaintiff's charter with the powers therein conferred, has found as a fact that the construction of the road was necessary for the public welfare, and neither the Superior Court nor this Court has the power to review that finding or set aside any of the powers therein conferred. The defendant cannot on appeal call in question the appropriation of the land, if within the power, but can only review the amount of the compensation awarded. Walker, J., in Jeffries v. Greenville,154 N.C. 497.
The defendant company itself has put in spur tracks to both of these industrial plants and to make connection with the Raleigh and Charleston Railroad. *Page 382 
(427) The defendant contends that the proposed spur track is not needed; but the fact that it has so vigorously opposed the extension by the plaintiff of these spur tracks to the same plants and to make connection with Raleigh and Charleston Railroad Company is, however, strong evidence that as a matter of fact the monopoly which the defendant had of the business of those plants was profitable and that competition is beneficial to those plants. Indeed, there is evidence that while the plaintiff railroad receives only $7.20 per car for hauling freight 58 miles, the defendant charged for shifting plaintiff's car with minimum car-load over its spur track to said plant, 400 yards, $9.20 per car. This may or may not be excessive, and it may or may not be true, as the defendant insists, that it is cheaper than the plaintiff can do the shifting over its own spur track, but the plaintiff prefers to put in its own spur track to do this work for itself, and, as we have held, it had the right under its charter and the general law to do so. Whether its action is financially wise or not, is a matter for its own decision. Besides this, the plaintiff and the Kingsdale Lumber Company assert that the defendant has unduly delayed the plaintiff's cars unless the freight was shipped out northward over the defendant's line. It certainly would have opportunity to do so. The Interstate Commerce Commission has held that complaints as to such matters of delay in interstate commerce cannot be reviewed by the State Corporation Commission. To make complaint at Washington would be inconvenient and expensive, and it may well be that the plaintiff would prefer on that ground also to put in its own spur tracks.
The public policy of this State is against monopoly, especially as to common carriers, and competition is a far better regulator, when open and fair, than regulation by the decree of any commission. The danger that commissions are created to guard against is combination between carriers, not competition. Industrial Siding case, 140 N.C. 239; R. R.Connection case, 137 N.C. 71 [137 N.C. 1]. As we have said, the power having been conferred on the plaintiff, as on the defendant to put in spur tracks the question whether it will be financially to the benefit of the (428) plaintiff to do so when the defendant avers that it is ready to do the work much more cheaply for the plaintiff than it can do the work for itself, is a matter which the plaintiff has a right to decide for itself. It may be unwise or ungrateful for the plaintiff to reject the benevolent offer of the defendant, but the latter cannot invoke the law to protect the plaintiff from its own folly. Evidently the defendant does not think that the competition of the plaintiff's spur track will be to the defendant's interest. *Page 383 
2. The other proposition advanced is that the plaintiff should not be allowed to cross the defendant's track within what it calls its "yard limits," that is, at any point where it has a side track. There are very many instances in this State, as at Charlotte, at Wilmington, at Raleigh, and elsewhere, where one railroad crosses another within the yard limits of the latter. In the present case the point of crossing is over one-half a mile cast of the defendant's station at Lumberton. The commissioners to lay out a crossing will always consider such and any other objection to its location, and their action is subject to the supervision of the trial judge. Not only the higher damages necessitated by crossing at a point that is in any way objectionable to the other company will be a deterrent to the plaintiff road from seeking it, but the sound judgment of the commissioners and of his Honor will prevent the crossing being located at a point that will be unnecessarily detrimental to the defendant. If, however, this is done, the remedy is in correcting the location, and not, as in this case, by forbidding the competing railroad from extending its track across the line of another railroad at all because the presiding judge may happen to think that the industrial plant seeking a competitive outlet for its business does not really need the benefit of any competition. It is worth nothing that the defendant agreed that the damages from crossing at this point is $300.
Indeed, it will be sufficient to repeat, on this point, verbatim
what we said in this case, 161 N.C. at p. 537, as follows: "The defendant urges that it will be great inconvenience to it for the plaintiff to condemn a right of way across its track at a point where it has a side-track, and thus interfere with the use of that siding for (429) shifting and for placing box cars. The plaintiff replies that the defendant has only recently extended its side-track to that point, and for the very purpose of creating this grievance. However that may be, an examination of the map shows that less than 100 yards east of the point where the plaintiff seeks to cross the defendant's track, the defendant's side-track ends and a public road crosses there the defendant's track. There is no reason, so far as this evidence shows, why the plaintiff cannot extend its track along the north side of the defendant's track before crossing, and condemn a right of way just beyond the end of defendant's side-track near the point where the public road crosses. While the plaintiff has a right, both under its charter and the general law, to condemn a right of way across the defendant's track, this right should be exercised with due regard to the convenience of both parties and with as little interference with the defendant's use of its tracks as can be obtained without a great increase in the cost and decrease in its convenience to the plaintiff. We do not see that a requirement that the plaintiff should cross at the point *Page 384 
herein suggested will add at all to the length of the plaintiff's proposed extension of its track nor to the cost thereof. If it should, this matter can be considered by the judge and jury in the assessment of damages for crossing at said point. His Honor, in consideration of the case, when it goes back, will adjudge as to the feasibility of the suggested alteration in the route of the proposed extension of plaintiff's track, calling in the aid of a jury, if necessary.
"We need not consider the numerous other exceptions made in this case, for, as his Honor held and the briefs for both parties admit, there is buta single point upon which all other matters depend, and that is the one which we have discussed as to the right conferred by statute upon the plaintiff to extend its tracks for the purposes above named.
 "The ruling of the court below must be set aside and the cause will be proceeded in as indicated in this opinion."
(430) The defendant has not sought to execute this suggestion, but its petition to rehear is based on opposition to the extension by the plaintiff of its spur track across the defendant's line at any point whatever, upon the ground that it is not necessary, because it has spur tracks itself to the industrial plants, and avers that it will do the work as well and as cheaply as the plaintiff can. This is but another way of saying that the plaintiff's competition will interfere with its profits, and the defendant does not deem that this is necessary or desirable, and therefore it has strenuously resisted the competition of the plaintiff's spur track.
As a matter of fact, it was admitted on the argument here that the plaintiff's spur track has been located across the defendant's line at the point in question, under the orders of Judge Cooke, and has been in actual operation for some two years. It has not been made to appear that the result has been detrimental to the defendant's use of its sidetrack. Should the defendant bona fide desire the location of the crossing to be made at the point indicated in our former opinion, beyond the terminus of its side-track, and near where the public road crosses, or elsewhere, because the present location has proven a hindrance in the use of its side-track, this question can be investigated in this proceeding, under the former opinion of this Court, as above set out. If it is found as a fact that such crossing should be located at the point indicated as feasible in our opinion, or elsewhere, instead of its present location, and it is found that its removal from its present location is necessary, this action can be had by proceeding under our former opinion, and not by this petition to set that decision aside.
Petition dismissed.
Cited: S. c., 161 N.C. 531; R. R. v. Mfg. Co., 166 N.C. 172 (g). *Page 385 
(431)