CITY OF GREENSBORO v. JOHN W. SIMPSON; R. G. VAUGHAN AND R. R. KING, TRUSTEES OF THE FIRST PRESBYTERIAN CHURCH OF GREENSBORO, NORTH CAROLINA.

(Filed 19 December, 1924.)

### Schools—Deeds and Conveyances—Statutes—Constitutional Law.

Where a deed to lands to a city for school purposes, conveying a fee-simple title thereto for such purposes, has been executed and delivered, and thereafter statutes have been enacted making certain provisions whereby the original owners and their heirs may acquire the lands in the event of the cessation of such use, and the lands have been held for such use for a long term of years, and then sold under authorization of a statute, reserving the proceeds of the sale for the use of the public school funds of the city: *Held,* the statute so specially passed was constitutional and valid, and a deed to the purchaser in accordance therewith passed an absolute fee-simple title.

47—188

APPEAL by defendants from *Bryson, J.,* at October Term, 1924, of GUILFORD.

Facts: On 2 September, 1924, the plaintiff, the city of Greensboro, contracted in writing to sell and convey to the defendants certain lands, known as Lindsay Street Graded School property, adjoining the First Presbyterian Church of Greensboro, at the price of $71,500.00. Plaintiff, thereafter, in accordance with the contract, tendered a fee-simple warranty deed, sufficient in form in all respects, and demanded payment of purchase price.

Defendants declined to pay the purchase price upon being advised that the plaintiff, the city of Greensboro, derived its title by virtue of a deed from Jed. H. Lindsay, dated 19 October, 1854, and that at the time this conveyance was made, there was a clause in the public-school law of North Carolina which read as follows: *"And provided further,* that if after the purchase or condemnation of land for school purposes, the school committee sees fit to remove the school, then the original owner of the land, or his vendee, shall have the right to take the land at the original price, with the privilege to the committee of removing the building or other improvements." Whereupon, plaintiff then instituted this action.

The deed from Jed. H. Lindsay to the school committee, of which the city of Greensboro is the successor in an ordinary fee-simple warranty deed, with full covenants of warranty and seizin, and makes no reference whatsoever to the said act, and plaintiff and the school boards, to whose rights it succeeds, have been in continuous possession of said property since 1854.

The said Jed. H. Lindsay made no attempt during his lifetime to either sell, convey, grant or devise any interest or right whatsoever in said property. He died during the year 1881, leaving a number of children, who have since died, leaving children now surviving, being grandchildren.

In 1872 (chapter 90, section 21) the General Assembly of North Carolina reënacted this section of the school law, and amended the same by inserting after the words "original owner," the words "his heirs or assigns," making the section then read:

"The school committee may receive any gift, grant, donation or devise made for the use of any school or schools within their jurisdiction, and in their corporate capacity they shall be and are hereby entrusted with the care and custody of all schoolhouses, schoolhouse sites, grounds, books, apparatus, or other public-school property belonging to their respective jurisdiction, with full power to control the same as they may deem best for the interest of the public schools and the cause of education. When, in the opinion of the committee, any schoolhouse, school-

house sites, or other public-school property has become unnecessary for public-school purposes, they shall return the land to the original owner, his heirs or assigns, if he or they so desire, on the payment of first cost, and remove or sell the building, after advertisement for twenty days at three public places in the townships. The deed for the property thus sold shall be executed by the chairman and clerk of the committee, and proceeds of the sale shall be paid to the township treasurer for the school expenses in the township."

By the Public Laws of 1881 (chapter 200) this section was entirely repealed, and it was provided that whenever a schoolhouse site has become unnecessary for school purposes the school committee might sell the same at public auction, after advertisement, etc., and the proceeds turned over to the board of education for school purposes.

The Public Laws of 1883 (chapter 121, section 19) amended the Laws of 1881 (chapter 200, section 54) by providing that the committee should first offer the site and improvements to the original grantor, donor, or his heirs, at a price fixed by the committee, and in the event of the disagreement as to the price the same should be determined by arbitration, as therein provided for. Therefore, the section (2582) of The Code of 1883 brings forward the section as thus amended.

The Public Laws of North Carolina, 1901 (chapter 4, section 30) repeals the above section as amended, and in lieu thereof provides that whenever any schoolhouse site has become unnecessary for public purposes the school authorities may sell the same at public auction, after advertisement of twenty days at three public places in the county, or at private sale. This is brought forward as section 4130, volume 2, Revisal 1908 (Pell's).

The General Assembly of North Carolina has reënacted this section as thus amended from time to time, and it now appears as section 5416, subsection 3, of the Consolidated Statutes of North Carolina, and the law now seems to be as set out in said section, which reads as follows: "When, in the opinion of the board, any schoolhouse, site, or other public-school property has become unnecessary for public purposes, it may sell the same at public auction, after advertisement of twenty days at three public places in the county, or at private sale."

The General Assembly of North Carolina (Extra Session 1924) passed an act to vest the title to the Lindsay Street Graded School property of the city of Greensboro, and make provision for the sale of same, and by this act assumed to vest title in the city of Greensboro as the owner in fee, to authorize the sale of the same to the trustees of the First Presbyterian Church, and provide for the execution of the deed for said property and the disposition of the proceeds of the said sale.

GREENSBORO v. SIMPSON.

The defendants declined to pay the purchase price, for the reason that they were advised that the plaintiff could not convey such an estate as it had agreed; that its estate was a qualified one, and subject to be defeated upon certain conditions, by reason of the law in force at the date of the making of the deed under which the plaintiff claimed the first-described lot, and subsequent legislation. This action was then instituted for the recovery of the contract price and is in effect a suit for specific performance.

When the attorneys in the case were here, the following was filed by the plaintiff, appellee, with the consent of the defendants, appellants:

"The attention of the court is called to the fact that the old acts of the General Assembly were not available to the attorneys in this case until their arrival here, where, upon examination of them, it appears that the clause in the school law, to wit, 'If . . . the school committee see fit to remove the school, then the original owner of the land or his vendee shall have the right to take the land at the original price,' . . . was not passed until six months after the deed of Jed. H. Lindsay to said school board had been made.

"The school laws, as passed or amended at the Session of 1840, page 14; 1842, pages 64 and 90; 1844, page 49; 1846, page 238; 1850-51, page 76; 1852, page 66, did not contain the clause in question.

"The first time the power to condemn land for school purposes was conferred on the school committee was in 1852 (page 66), and this does not contain any right to repurchase nor any reference to the clause in question.

"The clause in question first appears in the Acts of 1854-55, page 58, and is carried forward in the Revised Code of North Carolina (1854), which was adopted at that session. The school law containing the clause in question was adopted 10 February, 1855, and under the law (Revised Code of North Carolina, page 619, also page 311) took effect thirty days after the rise of the session.

"The deed was made 19 October, 1854. The law was not passed until 10 February, 1855, and took effect about April, 1855—probably six months after the deed was made.

"The General Assembly met at that time on the third Monday in November, biennially. (Revised Statutes, 1837, ch. 52.) Revised Code of North Carolina, 1854, page 309, sec. 25.

"The clause in question does not appear in Revised Statutes, 1837, and a careful examination of all laws from that time up to 1854 fails to disclose any such clause until the Acts of 1854-55, page 58, when the clause is enacted in a restatement and consolidation of the school law, which is brought forward in the Revised Code of 1854, adopted 1855.

"Therefore, it would appear that the deed was made before the clause in question was enacted into law."

*B. L. Fentress and A. Wayland Cooke for plaintiff.*
*O. L. Sapp and R. R. King for defendants.*

CLARKSON, J.   On 19 October, 1854, Jed. H. Lindsay, of Guilford County, N. C., made a deed for the land in controversy, for the consideration, expressed in the deed, of $37.50, to James Sloan, Andrew Weatherby, and Jed. H. Lindsay, school committee for Common School District No. 38 of Guilford County "and their successors in office."   The deed was duly acknowledged and recorded in Book 36, p. 197, register of deeds office for Guilford County.

The land in controversy has been used, up to the present time, for school purposes, and was used in connection with the graded-school system of the city of Greensboro.   The land in controversy and another piece the defendants have agreed to purchase from plaintiff for $71,500.   The contract entered into between the parties—the city of Greensboro, the plaintiff, and the defendants, trustees of the First Presbyterian Church of Greensboro, N. C.—provides that defendants will pay for the land "if and when the party of the first part can and shall convey a good and indefeasible estate to said lands in fee, free and clear of all encumbrances, and with the usual covenants of warranty, seizin, etc., to the parties of the second part and their successors in office for said church."

The General Assembly of North Carolina (Extra Session), by act ratified 19 August, 1924, entitled "An act to fix the title to certain school property in the city of Greensboro and make provision for the sale of the same."   This act made provision for the sale of the lot in controversy and another lot to defendants, and by this act assumed to vest the title in the city of Greensboro as owner in fee to the lot in controversy.   The act says, "which property has been held and used for more than fifty years by the city of Greensboro and the Greensboro School District for school purposes," . . . "is declared to be now vested in the city of Greensboro, and shall, from and after the ratification of this act, be vested in and held by the 'city of Greensboro,' as defined in chapter 37 of the Private Laws of North Carolina, Session 1923, as owner thereof in fee."

Section 21 of the act of 1923, *supra,* is as follows: "The territory embraced in the old city limits is and shall continue to be and remain an independent school district, under the name of the 'Greensboro School District,' and, as such, shall have exclusive control of the public free schools in said district.   The conduct of said schools shall be vested

in a board of seven (7) members, to be elected by the council, as herein provided for, and said board collectively shall be known and designated as the 'Board of Education of Greensboro.' The members of said board, in order to be eligible to office, shall be residents of said city, and shall be persons of good moral character."

Sections 2, 3, and 4 of chapter 49, Private Laws, Extra Session 1924, are as follows:

"SEC. 2. That the said city of Greensboro is hereby authorized and empowered, through its mayor and city council, to sell privately and convey in fee, for the sum of $71,500, to the trustees of the First Presbyterian Church, and their successors, for the use and benefit of the said church, its successor or successors and assigns," the land in controversy (describing it by metes and bounds, and the other lot in the beforementioned contract, describing it by metes and bounds).

"SEC. 3. That any deed to be executed by the city of Greensboro under the provisions of this act shall be sufficient to convey said property in fee if the same shall be signed in the corporate name of said city by its mayor, attested by the city clerk, and sealed with the corporate seal of the city.

"SEC. 4. That the said sum of $71,500 to be paid to the city of Greensboro for said land shall be placed by the city treasurer to the credit of the school fund of the Greensboro School District, and shall be used for such public purpose or purposes as the board of education of Greensboro may determine."

We think the Legislature had the power to pass the act of August, 1924, vesting the title to the land in controversy in the city of Greensboro, and giving it the right, power and authority to sell the land to defendants, its successor or successors or assigns. The money obtained by the sale is to be placed to the credit of the school fund of Greensboro School District and be used for such public purpose or purposes as the board of education may determine.

The land was sold originally for school purposes; it had been used for fifty years for school purposes. The fund arising from the sale is to be turned over to the proper authorities and used for public purposes, as the board of education of Greensboro may determine, presumably for school purposes. *Blue v. Wilmington,* 186 N. C., 321; *Harris v. Durham,* 185 N. C., 572; *Torrence v. Charlotte,* 163 N. C., 562; *Venable v. School Comrs.,* 149 N. C., 120.

From the amended brief filed in this case, and an examination of the statutes, we find that when the original deed was made by Jed. H. Lindsay and others to the school board and their successors in office, there was no statute in this State that could in any way affect the plain terms of the deed to the land in controversy. The judgment of the court

below, we think, is in all respects in accordance with law, and that upon execution and delivery by plaintiff to the defendants of a fee-simple warranty deed to said lands, defendants will be seized of a good, sure and indefeasible title in fee simple to said lands.

It is a matter of public interest to note that on the argument of this case it was stated that on the land in controversy was established one of the first graded schools in the State.

The judgment of the court below is

Affirmed.