TOWN OF MORGANTON v. HUTTON & BOURBONNAIS COMPANY, INC., G. NORMAN HUTTON AND WIFE, OPAL B. HUTTON, RALPH W. HUTTON AND WIFE, CHARLOTTE W. HUTTON, MRS. DORIS COUNCILL, A WIDOW, A. B. HUTTON, JR. AND WIFE, MARIE HUTTON, AND DONALD HUTTON AND WIFE, EVE BALLARD HUTTON.

(Filed 14 January, 1960.)

**1. Eminent Domain § 1—**

The power to take private property for a public purpose by eminent domain is limited only by the requirement that fair compensation be paid, Constitution of N. C., Article I, sec. 17, and in the exercise of its power the sovereign determines the nature and extent of the property required, whether an easement or a fee, whether for a limited period of time or in perpetuity.

**2. Constitutional Law § 7:  Eminent Domain § 4—**

The General Assembly has the right to determine what portion of its sovereign power of eminent domain it will delegate to public or private corporations to be used for the public benefit.

**3. Municipal Corporations § 4—**

A municipal corporation has such sovereign power as has been delegated to it by its charter or by general statute.

**4. Eminent Domain § 4—**

The power of a municipal corporation to condemn land for its water shed in order to protect from contamination its water supply is not limited to an easement, but it has been given power to condemn the fee for that purpose, G.S. 130-162, G.S. 160-205, and the reference in G.S. 40-19 to an easement relates to procedure and is not a limitation upon the power of the municipality.

**5. Eminent Domain § 12—**

Where a municipality in its petition in condemnation seeks to acquire "lands" embraced in its water shed to protect its water from contamination, and the answer alleges that the "property" was of great value and requests "all elements of damage" to be considered, and it is apparent from the commissioner's report and the proceedings after exception and appeal from the report that the value of the timber and mineral interest was included in ascertaining the amount of compensation, and the judgment provides that it should operate as a conveyance of the "lands", the condemnation is of the fee and not a mere easement.

**6. Same—**

Everything connected with the proceedings which will throw light on the intent of the condemnor is relevant in determining whether the condemnor obtained the fee or a mere easement, and while averments in a subsequent action by the condemnor and the condemnee against a stranger, which averments describe the estate of the condemnor as an easement, may be considered upon the question of intent, such circumstance is not conclusive, and where the entire condemnation proceedings disclose that the intent was to condemn the fee and that the value of

the entire land, including timber and minerals was included in the conpensation paid, the condemnor will be held to have acquired the fee.

**7. Same—**

The intent of the condemnor, and whether the compensation paid is ascertained on the basis of the value of the entire land or merely an easement therein, is determinative of whether the condemnor acquired the fee or a mere easement, and when such intent is manifest and the language is broad enough to include the fee simple title to the lands the condemnor acquires the fee even though the exact technical words describing the fee simple are not used.

**8. Judgments § 30—**

Judgment for plaintiffs in an action by condemnor and condemnee against a third person for trespass does not involve title of the condemnor and condemnee as between themselves, and therefore such title not being in issue the judgment does not estop condemnor from thereafter asserting the ownership of the fee as against the condemnee, notwithstanding averments in the action in trespass that the condemnor owned a mere easement.

**9. Estoppel § 4—**

Conduct of a party cannot constitute the basis for an estoppel in *pais* when such conduct does not cause the other party to change his position or in any manner prejudice his rights.

HIGGINS, J., took no part in the consideration or decision of this case.

APPEAL by defendants from *Campbell, J.,* March 1959 Term, of BURKE.

This action was begun in 1956 to obtain a judicial determination of the rights acquired by plaintiff by the payment of compensation fixed in a decree of condemnation rendered at the April 1928 Special Term of Burke Superior Court in an action against defendant Hutton & Bourbonnais Company and others. The adjudication is sought to determine the ownership of and right to market timber growing on the land condemned.

The action was originally instituted against the corporate defendant. A hearing was had in March 1957 at which time others whose ancestors were parties to the condemnation proceeding asserted an interest adverse to plaintiff's claim. They were not parties to this action. Judgment was then rendered in favor of plaintiff and defendant appealed. We remanded without determining the merits to permit all adverse claimants to be made parties. 247 N.C. 666, 101 S.E. 2d 679.

The additional claimants were made parties defendant. All defendants now make an identical defense against the claim asserted by plaintiff.

A jury trial was waived. The court made findings of fact and drew

conclusions of law and, based on the findings and conclusions, adjudged that plaintiff acquired full fee simple estate in the lands described in the condemnation proceeding.

*Womble, Carlyle, Sandridge & Rice, H. L. Riddle, Jr., Sam J. Ervin, III, Livingston Vernon, and John H. McMurray* for plaintiff, appellee.

*Patrick, Harper & Dixon* for defendant appellants Hutton & Bourbonnais Company, Inc., G. Norman Hutton and wife, Opal B. Hutton, and Ralph W. Hutton and wife, Charlotte W. Hutton.

*Marshall V. Yount* for defendant appellants Mrs. Doris Councill, A. B. Hutton, Jr. and wife, Marie Hutton.

RODMAN, J. The first question presented by the assignments of error is: What estate did plaintiff acquire by the condemnation proceeding? Was it, as plaintiff contends, an unqualified estate in fee simple, or was it, as defendants contend, an easement leaving the fee in defendants in the condemnation proceeding with the right to harvest the timber grown thereon?

The answer is to be found by determining the extent of the power which plaintiff had to take and the extent to which such power was exercised.

The power of eminent domain, that is, the right to take private property for public use, is inherent in sovereignty. Our Constitution, Art. I, sec. 17, requires payment of fair compensation for the property so taken. This is the only limitation imposed on sovereignty with respect to taking.

The taking must, of course, be for a public purpose, but the sovereign determines the nature and extent of the property required for that purpose. It may take for a limited period of time or in perpetuity. It may take an easement, a mere limited use, leaving the owner with the right to use in any manner he may desire so long as such use does not interfere with the use by the sovereign for the purpose for which it takes, or it may take an absolute, unqualified fee, terminating all of defendant's property rights in the land taken. *R. R. v. Davis*, 19 N.C. 451; *Torrence v. Charlotte*, 163 N.C. 562, 80 S.E. 53; *Yarborough v. Park Commission*, 196 N.C. 284, 145 S.E. 563; *Brooklyn Park Commissioners v. Armstrong*, 6 Am. Rep. 70 (N.Y.); *Sanitary Dist. of Chicago v. Manasse*, 42 N.E. 2d 543 (Ill.); *City of Newton v. Perry*, 39 N.E. 1032; *Chesapeake & Ohio Canal Co. v. Great Falls Power Co.*, 129 S.E. 731 (Va.); *Newton v. City of Newton*, 74 N.E. 346 (Mass.); *Wright v. Walcott*, 131 N.E. 291 (Mass.), 18 A.L.R. 1242; *Carroll v. City of Newark*, 158 A459 (N.J.); *Greenwood Coun-*

ty v. Watkins, 12 S.E. 2d 545 (S.C.); Eldridge v. City of Binghamton, 24 N.E. 462 (N.Y.); Ramsey v. Leeper, 31 P 2d 853 (Okla.); McConihay v. Wright, 121 U.S. 201, 30 L. Ed. 932; 18 Am. Jur. 740.

The Legislature has the right to determine what portion of this sovereign power it will delegate to public or private corporations to be used for public benefit. R. R. v. R. R., 165 N.C. 425, 81 S.E. 617; Clifton v. Highway Comm., 183 N.C. 211, 111 S.E. 176.

Plaintiff, a municipal corporation, is invested with such sovereign power as has been delegated to it by its charter, c. 104, Private Laws 1913, or by general statute applicable to all municipalities. Sec. 3 of art. 10 of plaintiff's charter authorizes it to acquire and hold "rights of way, water rights, sewerage outlets, and other property" for the purpose of maintaining and furnishing a pure and adequate water supply.

Apparently no statute of general application authorizing the condemnation of land for the storing of water existed prior to 1903. By c. 159, P.L. 1903, the Legislature authorized water companies to "acquire by condemnation such *lands* and *rights in land* and water as are necessary for the successful operation and protection of their plants." This Act was codified as Rev. 3060. The Act was amended by c. 62, P.L. 1911, to include municipalities and as amended was codified as C.S. 7119. It is now G.S. 130-162.

The Municipal Corporation Act of 1917 expressly authorized any municipality to own and operate a water system. G.S. 160-255. To accomplish that and other authorized purposes it granted authority to municipalities to purchase "*any land,* right of way, water right, privilege, or *easement,* either within or outside the city" as the municipality deemed necessary. G.S. 160-204. It further provided that if the municipality was unable to agree with the owners "for the purchase of such *land,* right of way, privilege or *easement,*" it might acquire by condemnation. G.S. 160-205.

The Legislature, in each of the statutes authorizing the town to acquire by purchase or condemnation, granted it the right to take and hold either the land or rights in land or easement, as it might deem necessary for the development of the project. Clearly, as here used, the words do not have the identical meaning. The word "land" manifestly had a larger significance than the words "easement" or "interest therein." Each word used is presumably used for a purpose, and in ascertaining the meaning of the statutes we are properly required to give significance to each word which the Legislature has used.

Appellants urge in support of their assertion that only an easement could be acquired because the condemnation statute which prescribes the procedure, C.S. 1723 (now G.S. 40-19) so declares. That

section dealing with procedure provides in part, upon payment of the compensation fixed "all persons who have been made parties to the proceedings shall be divested and barred of all right, estate and interest in such easement in such real estate during the corporate existence of the corporation aforesaid." This phrase first appeared in the Revisal of 1905. The manner of acquiring by eminent domain was placed by the codifiers of the Revisal in the chapter on railroads. This Court had, prior to 1905, repeatedly held that railroads acquired not a fee but a mere easement since that was all that was needed for that purpose. *Hodges v. Telegraph Co.*, 133 N.C. 225, 45 S.E. 572; *Shields v. R. R.*, 129 N.C. 1; *R. R. v. Sturgeon*, 120 N.C. 225; *R. R. v. Bunting*, 168 N.C. 579, 84 S.E. 1009.

The Legislature did not, we think, intend, by referring to the procedure to be used in acquiring by condemnation, to restrict the power of acquiring in fee when necessary for the enumerated purposes. The reference was merely for procedural purposes. *Greenwood County v. Watkins, supra; Sanitary Dist. of Chicago v. Manasse, supra.*

Concluding as we do that the town had the power to acquire all of the estate and interest of defendants by condemnation, we must ascertain what estate and interest plaintiff sought and was granted. Notwithstanding its power to take all, it was not required to do so.

The proceeding to condemn was begun in August 1922 against the corporate defendant. The petition alleged the town was operating a water system for the benefit of its inhabitants, that its source of supply was not sufficient for its needs, and that it was necessary to acquire an additional supply, "and to that end to acquire the *lands* of the defendant hereinafter mentioned and described in order to protect from contamination the water which your petitioner is preparing to bring from the Upper South Fork River in the South Mountains to the Town. . ." Section 3 of the petition alleges "That the *lands* of defendant which your petitioner desires to acquire contain 2131.59 acres, and are described as follows:" Then follows a detailed description of the land. Section 5 alleges petitioner had sought "to purchase the lands of defendant hereinbefore described," "that the defendant has refused to sell said land to plaintiff for a reasonable price, and has refused to name a price for said lands. . ." Everywhere in the petition the property to be taken is referred to as land, not an easement or an interest in the land. The defendant answered and asserted that it was not necessary "to take defendants' land or so large a portion of it for such supply. . ." The answer repeatedly refers to "the land sought to be condemned." It denies that "all of said boundary of land sought to be condemned is 'unfit for agricultural purposes.' " It avers that the land possesses "very great value" and asks

"if its *property* is to be taken for the use of the petitioner that it be paid a reasonable and fair value for the same, *all elements of damage considered.*" The individuals who were cotenants with the corporation were made parties defendant and adopted the company's answer. The town took possession in 1922; the defendants sought to remove to the Federal courts; the right to remove was denied and this denial was affirmed by this Court at the Spring Term 1924. *Morganton v. Hutton,* 187 N.C. 736, 122 S.E. 842.

Commissioners were appointed by the clerk to appraise. The land sought to be condemned was part of a larger tract owned by defendants. The Commissioners reported: "we visited the premises and land in controversy, and after taking into full consideration the quality and quantity of the land aforesaid, the *timber and mineral interests* on said land and all other inconveniences likely to result to the owner, we have estimated and do assess the damages aforesaid at the sum of $25,800.00." (Emphasis added here and above.)

The report followed the form prescribed by the statute, C.S. 1722 (G.S. 40-18) but carried the superadded declaration that the sum to be paid included the timber and minerals on the land. Defendants in due time filed exceptions to the report. The exceptions are based on the assertion that the amount awarded was inadequate. There is no suggestion that the decree of confirmation would not vest title to the timber and minerals in petitioner or that it would take anything less than an absolute estate in fee.

The clerk overruled the exceptions and confirmed the report. Defendants excepted and appealed. Pending hearing on the appeal, defendants moved the court for an order permitting them to enter and inspect the lands in order to ascertain the value thereof "by reason of minerals such as feldspar, mica, iron, and other minerals." The court, in January 1926, allowed defendants' motion subject to restrictions necessary to assure no action which could in any wise affect the purity of the water plaintiff was taking. The case was heard on defendants' appeal at the April Special Term 1928. A jury trial was waived. The court found petitioner was entitled to condemn "the lands" of defendant for the uses and purposes set out in the petition, that defendants were entitled to recover of plaintiff the sum of $45,000 with interest from 12 August 1922, the date petitioner took possession, as compensation for said lands. It thereupon adjudged: "that this judgment and the satisfaction thereof shall operate as a deed of conveyance and shall transfer, convey to and vest in the petitioner, the Town of Morganton, its successors and assigns, during its corporate existence, the lands of the defendants sought to be condemned herein for the uses and purposes mentioned and set forth in the petition."

Nowhere in the condemnation proceeding is there a suggestion that the parties intended to take less than the full estate authorized by law. It was recognized that the petitioner would require complete and exclusive control of the entire area for the purpose for which it was taking. It was anticipated that such exclusive use and control would be perpetual. It was proper, therefore, for petitioner to pay the owner for all of its rights in the property including the timber and minerals as reported by the Commissioners.

Having been fully compensated for the timber as a part of the land taken, no sound reason is suggested why defendants should enrich themselves at public expense. The language of *Folger, J.,* in *Brooklyn Park Commissioners v. Armstrong, supra,* is, we think, pertinent. He said: "Language may be broad enough to vest an absolute title to lands, without being technical in its terms. If the expressions are such as that the whole force of them is not applied, unless a fee simple is created, that estate will be taken, though the exact words be not used . . . So in *Dingley v. The City of Boston,* 100 Mass. 544, an authority to 'purchase or otherwise take lands,' and the declaration that 'the title to all lands so taken should vest in the city,' was held to vest a title in fee simple in the defendants . . . Doubtless, in most cases, when land is condemned for a special purpose, on the score of its public utility, the sequestration is limited to that particular use. But this is where the property is not taken, but the use only. Then, the right of the public being limited to the use, when the use ceases the right ceases. Where the property is taken, the owner paid its true value, and the title vested in the public, it owns the whole property, and not merely the use; and, though the particular use may be abandoned, the right to the property remains. The property is still held in trust for the public by the authorities. By legislative sanction it may be sold, be changed in its character from realty to personalty, and the avails be devoted to general or special public purposes."

The Supreme Court of Oklahoma said in *Ramsey v. Leeper, supra:* "When land is condemned for the purpose of providing a water supply, such as in the construction of a reservoir, or for incidental use in connection therewith as in the instant case, jurors and appraisors do not make any deduction in the price paid the owner of the land on the theory that it might revert to him. Such condemnation is made in contemplation of a future continued use. In other words, cities and other municipal and *quasi* municipal corporations in the exercise of the right of eminent domain must, do, and should, pay the full value of the land condemned." *Torrence v. Charlotte, supra; Binder v. County Board of Education,* 5 S.W. 2d 903; *Sanitary Dist. of Chicago*

*v. Manasse, supra; Valentine v. Lamont,* 96 A 2d 417 (N.J.); *City of Waukegan v. Stanczak,* 129 N.E. 2d 751 (Ill.).

Manifestly condemnor only acquires what it pays for. The estate taken must be determined by an examination of the condemnation proceeding. Everything connected therewith which will throw light on the intent of the condemnor in seeking to acquire and the order of the court which permits acquisition is relevant in ascertaining the estate taken. Whether condemnor in a particular instance acquired a fee or lesser estate is well illustrated by two decisions of the Supreme Court of Oklahoma. c.f. *Ramsey v. Leeper, supra;* and *Cushing v. Gillespie,* 256 P 2d 418, 36 A.L.R. 2d 1420. In our opinion Judge Campbell correctly interpreted the decree of condemnation by holding that payment of the amount fixed deprived the then owners of all interest in the land described.

The answer avers plaintiff is estopped to claim the timber or land in fee. The basis for this plea is an action instituted 12 July 1934 by the defendants against Caroline Hudson to recover damages for trespass and to enjoin further trespass on the land here in controversy.

The complaint in that action alleged: "That to secure the watershed, plaintiff, Town of Morganton, was forced to condemn and did condemn the necessary drainage area to protect the source of said water, and by reason of such condemnation, is the owner of an easement and right in and to the said land and premises constituting its said water shed, which is here bounded and described as follows: (Here follows a description of the 2131.59 acre tract of land in question.)

"That the plaintiff, Hutton & Bourbonnais Company, subject to the easement acquired by the said Town of Morganton as hereinbefore alleged, is the owner of the fee of said lands and premises, constituting said water shed."

Defendant Hudson demurred to the complaint on the ground of misjoinder. The demurrer was sustained, and plaintiff appealed. This Court reversed, 207 N.C. 360, 177 S.E. 169.

On remand a jury trial was waived. The court found as a fact that plaintiffs were the owners of the land described in the complaint, that defendant had trespassed thereon to plaintiffs' damage in the sum of 3c, and further found that defendant was not the owner of the land claimed by her. It was thereupon adjudged that plaintiffs recover the damage assessed, that defendant was not the owner of any land within the boundaries described in the complaint, and defendant was enjoined from further trespass. There was no adjudication of plaintiffs' title *inter se.*

The plea of *res judicata* cannot be sustained. A judgment estops

a party as to those matters determined or properly incident to a determination of the questions at issue in the action in which the judgment was rendered. There can be no estoppel with respect to matters which the court was not called upon to consider. Hutton & Bourbonnais and its cotenants were the source of the town's title. So far as defendant Hudson was concerned, it was immaterial whether Morganton owned the fee or a lesser interest therein. The question at issue was: Did the plaintiffs, or either of them, own the land or did defendant own it? There was no question raised as to the respective interest of the plaintiffs and the court did not undertake to determine that interest. It merely accepted without investigation the allegations of the complaint. This is not sufficient to estop. *Jenkins v. Jenkins,* 225 N.C. 681, 36 S.E. 2d 233; *Cannon v. Cannon,* 223 N.C. 664, 28 S.E. 2d 240; *Stancil v. Wilder,* 222 N.C. 706, 24 S.E. 2d 527; *Hardison v. Everett,* 192 N.C. 371, 135 S.E. 288; *Nash v. Shute,* 182 N.C. 528, 109 S.E. 353.

The mere fact that plaintiff and present defendants joined to prevent a trespass is not such conduct as amounts to estoppel in *pais.* Plaintiff has done nothing to cause defendants to change their position or which in any manner prejudices their rights. The public's right to the property for which it paid cannot be defeated in this manner. *Peek v. Trust Co.,* 242 N.C. 1, 86 S.E. 2d 745; *Trust Co. v. Casualty Co.,* 237 N.C. 591, 75 S.E. 651.

The allegations in the trespass action against Caroline Hudson, if they have any pertinency, merit consideration only as an aid in interpreting the decree of condemnation. They of course cannot diminish the estate which the town acquired in 1928. We have given due consideration to the allegations for that purpose and conclude that the allegation with respect to ownership was a mere misinterpretation of the effect of the decree of confirmation.

The court correctly concluded from the findings, to which there are no exceptions and no request for additional findings, that plaintiff acquired full fee simple title to the lands described in the condemnation proceeding. The judgment is

Affirmed.

HIGGINS, J., took no part in the consideration or decision of this case.