17834

W. Albert ATKINSON, Appellant, v. CAROLINA POWER & LIGHT COMPANY, Respondent, Benjamin H. REDFEARN, Appellant, v. CAROLINA POWER & LIGHT COMPANY, Respondent.

(121 S. E. (2d) 743)

*Messrs. James P. Mozingo III, Benny R. Greer* and *Archie L. Chandler,* of Darlington, and *Edward E. Saleeby,* of Hartsville, *for Appellants,*

*Messrs. Paulling & James,* of Darlington, *L. C. Wanna-maker,* of Cheraw, and *Charles F. Rouse* and *A. Y. Arledge,* of Raleigh, N. C., *for Respondent,*

September 14, 1961.

PER CURIAM.

For the purposes of appeal the cases of *Atkinson v. Carolina Power & Light Company* and *Redfearn v. Carolina Power & Light Company* were consolidated.

The *Redfearn case* challenges the right of the defendant to condemn the fee of that portion of the land sought between the high water line and the 230 foot contour line while the *Atkinson case* questions defendant's right to condemn the fee in any of the property sought.

Plaintiff contends in each case, first, that condemnation up to the 230 foot contour line is arbitrary, capricious and unnecessary, second, that Section 24-12 of the Code of Laws

of South Carolina, 1952, as amended is unconstitutional in that it purports to authorize the condemnation in fee simple property of another by a private corporation in contravention of Section 17, Article 1, and Section 20, Article 9, of the Constitution of South Carolina, 1895.

We have carefully considered the Order in the Atkinson cause and find that it correctly disposes of the questions raised, and it is adopted as the Opinion of this Court.

## Order Of Judge Lewis

The defendant, Carolina Power & Light Company, is a public service corporation duly organized and existing under the laws of the State of North Carolina, and is authorized to engage in the business of generating, transmitting, and distributing electric power and energy for public use and has been and is duly authorized to engage in said business in South Carolina.

In furtherance of its said business the defendant set out to construct a steam electric generating plant on the waters of Black Creek in Darlington County. A large reservoir or cooling lake is an essential element of such plant. The lake was to be formed, and has since been formed, by the construction of a dam across Black Creek in Darlington County and ponding back the waters of the creek on a large area of land riparian to the stream in Darlington and Chesterfield Counties. The defendant acquired in fee simple by purchase approximately 92 per cent of the lands necessary to compose the lake site, consisting of all land from the bed along both sides of the creek up to contour elevation 230 feet above mean sea level. The water under normal operations was to cover the land up to contour elevation 222, or thereabout, and the remainder of the land lying between contour elevation 222 and 230 was to be used to form a belt back of the water's edge entirely around the lake necessary to the proper maintenance and operation of the lake and plant. The defendant being unable to acquire by purchase the fee simple title to approximately 8 per cent of the remaining lands for

the lake site, undertook to acquire the same by condemnation, including the lands of the plaintiff in controversy.

By Section 24-12 of the Code of Laws of South Carolina, defendant is granted the right "to acquire fee simple title or an easement in land, pursuant to the condemnation proceedings mentioned in § 58-302, for the construction of electric generating plants, substations, switching stations and impounding of waters to be used in conjunction with electric generating plants." Under and by virtue of the powers thus conferred the defendant instituted condemnation proceedings to condemn the fee simple title to 211½ acres of land in Darlington County owned by the Plaintiff for use as a part of its lake site which was to be used in conjunction with its said Darlington County Steam Electric Generating Plant. Thereafter, this action was commenced by plaintiff under the Declaratory Judgment Act, Code 1952, Sec. 10-2001 *et seq.*, to determine whether the defendant is authorized to condemn all or any part of the plaintiff's land up to the 230 foot contour. Upon the verified complaint, I issued a Temporary Restraining Order temporarily restraining further proceedings in condemnation until the further order of the court and issued a Rule to Show Cause. A motion to dismiss the action was filed by the defendant on the ground that the action was not maintainable under the Declaratory Judgment Act, in that the plaintiff's remedy, if any, was for a permanent injunction. Upon the hearing of this motion counsel for plaintiff and defendant agreed that this action be treated as one for permanent injunctive relief in accordance with the usual procedure in such cases. This eliminated the necessity for a ruling on the motion. The defendant filed a verified Answer and Return to the Rule upon which a hearing was had at which I issued an Order continuing the restraining order to the final hearing on the merits, with the provision that the defendant Power Company was authorized to immediately take possession of and proceed to clear and impound water upon that portion of the 211½ acres of land lying below the

221 ft. contour line. At about the same time three actions were instituted in Chesterfield County entitled:

*"Benjamin H. Redfearn v. Carolina Power & Light Company,"*

*"Mary Ammons et al. v. Carolina Power & Light Company,"* and

*"Ernest M. Miller v. Carolina Power & Light Company."*

The Redfearn action was brought under the Declaratory Judgment Act, and the Ammons and Miller actions were brought for the purpose of obtaining a permanent injunction against the defendant enjoining it from condemning the fee simple title to their respective lands lying between the high water mark of the lake and the 230 foot contour line, which defendant was seeking to condemn for the aforesaid purpose.

This action and the three Chesterfield County actions all involved the same basic question, to wit: the right of the defendant to condemn in fee simple the lands of the respective plaintiffs sought to be condemned as a part of said lake site.

I issued an Order of Reference to the Master of Darlington County to take testimony in this action and report the same to this court. I issued a similar order referring each of the Chesterfield County cases to the Master of Chesterfield County, with the same instructions. In the economy of time and expense counsel for the parties in all four of said actions thereupon entered into an agreement whereby evidence would be taken before the Master of Chesterfield County and that the evidence so taken would constitute the evidence for each of the four cases. Such evidence was taken and upon the report of the same to the court by the Chesterfield County Master this action, and the three Chesterfield County actions, came on to be heard by me at Chambers in Darlington. For obvious reasons a separate order will be issued in each case.

In his complaint the plaintiff herein admits that the defendant is entitled to condemn a flowage easement in so much of his land as will be actually used to impound water up to the 220 foot elevation contour line, but alleges that it has no need for and does not have the right to condemn the fee simple title to the land to be covered by water or to condemn any estate in land above the 220 foot contour. In answer to this, and as showing some of the principal considerations that entered into the determination of the necessity for the fee simple title to the entire area sought, defendant cited and relied upon the testimony of Messrs. A. J. Skaala and Paul E. Gourdon, who testified for the defendant, without contradiction, to many cogent reasons why the fee simple title to all of the land up to the 230 foot contour line is necessary to the proper and convenient maintenance and operation of the plant.

It is undisputed that the defendant's Darlington County Steam Electric Generating Plant is a part of the system constructed and operated by it to generate and to supply the public with electric energy, and that in so doing the defendant is acting within its corporate purpose. The defendant's corporate purpose is a public one, and the exercise of the power of eminent domain to obtain the area of land for its plant and necessary lake site is for a public use. That the erection, maintenance, and operation of plants for generating electric energy and distributing it to the public is a public use for which private property may be appropriated under authority delegated by the legislature, has been so repeatedly held by the courts that it is now settled and is no longer open to question. *Ingleside Manufacturing Company v. Charleston Light & Power Company,* 76 S. C. 95, 56 S. E. 664; *McMeekin v. Central Carolina Power Company,* 80 S. C. 512, 61 S. E. 1020; *Southern Power Company v. Walker,* 89 S. C. 84, 71 S. E. 356; *Twin City Power Company v. Savannah River Electric Company,* 163 S. C. 438, 161 S. E. 750 and *Bookhart v. Central Electric Power Cooperative,* 219 S. C. 414, 65 S. E. (2d) 781.

By Section 24-12 of the 1952 Code of Laws the Legislature of South Carolina has expressly delegated to the defendant company, and all others similarly engaged, the power of eminent domain. In the exercise of that power those to whom it has been delegated represent the sovereignty of the state, and are empowered to decide, subject only to supervision of the courts to avoid fraudulent or capricious abuse, what and how much land of the citizens they will condemn for their purposes. As stated by the Court in the case of *Bookhart v. Central Electric Power Company Cooperative,* 222 S. C. 289, 72 S. E. (2d) 576, 578, quoting from 29 C. J. S., Eminent Domain, § 89, p. 882:

"The legislature may delegate the power of determining the necessity of exercising the power of eminent domain to public officers or boards or to private corporations vested with the power of eminent domain, and in the absence of any statutory provision submitting the matter to a court or jury the decision of the question of necessity lies with the body of individuals to whom the state has delegated the authority to take. Generally, a determination by the grantee or the power is conclusive and is not subject to judicial review, in the absence of fraud, bad faith, or clear abuse of discretion."

The case of *Riley v. Charleston Union Station Company,* 71 S. C. 457, 51 S. E. 485, 497 involved some of the same questions with which we are here concerned. Therein the defendant instituted proceedings to condemn a parcel of land on which to erect a union station. The landowner sought an injunction on the grounds, among others, that the principal stockholders of the corporation had suitable land on which to erect the station and that there was no public need to justify taking her land. Said the Court in disposing of these contentions:

"The case of *S. C. R. Co. v. Blake,* 9 Rich. Law 228 shows that the grantee of the power to condemn lands is not the sole judge whether any particular parcel of land is required for the purposes of the road, and that the final de-

termination of this question rests with the courts. This is in accord with many authorities cited in *Chicago & N. W. Ry. Co. v. Morehouse,* 88 Am. St. Rep. 946, note. Nevertheless it is right that weight should be given to the fact that the grantee to whom the statute has delegated the power to condemn has decided that the particular land in question is required. As said in *Smith v. R. Co.,* 105 Ill. 511, and repeated in *O'Hare v. Chicago etc., R. Co.* (Ill.) [139 Ill. 151], 28 N. E. 923, 925: 'Every company seeking to condemn land for public improvement must, in a modified degree, be permitted to judge for itself as to what amount is necessary for such purpose.' This right, however, is subordinate to the right of the courts to prevent an abuse of the power by restricting its exercise to the reasonable necessities of the case, since to take more than reasonable necessity requires is to appropriate private property to private use. We have carefully considered the testimony in view of these principles and see no just ground for overruling the decision of the circuit court that such reasonable necessity exists. * * * The safer rule is that the grantee of the power to condemn must not abuse the discretion confided by the legislature, and spoliate private property by taking, for pretended public use, more than a reasonable necessity requires. We find no abuse of discretion or bad faith in defendant's proposal to condemn plaintiffs' property, and the general rule is that, if there be no bad faith or abuse of discretion on the part of the grantee in the matter of location, his discretion will not be interfered with. 10 Ency. Law (2d Ed.) 1057, and cases cited in note 1. A somewhat similar contention was made in *Kansas & Texas Coal Ry. v. Northwestern Coal & Mining Co.,* 161 Mo. 288, 61 S. W. 684, 51 L. R. A. 936, 84 Am. St. Rep. [717] 722, and was overruled by the court."

Thus more than fifty years ago was announced the rule, which later cases have followed, that the decision of the question of necessity lies with the one to whom the state has delegated the authority to take property

for a public use and is not subject to review by the court in the absence of fraud, bad faith, or abuse of discretion. Such being the rule, I am satisfied from the record herein that the land of plaintiff undertaken to be condemned in fee by the defendant is reasonably necessary for the construction and operation of its aforesaid electric generating plant and impounding of waters to be used in conjunction therewith and I so conclude as matters of fact and law.

Moreover, the burden is on the landowner to allege and establish bad faith, and abuse of discretion. The plaintiff failed to carry his burden of proof in this respect. On the other hand, the defendant established by uncontradicted evidence a need in good faith for the fee to the land sought to be condemned.

Eminent domain is an attribute of sovereignty and the general rule now recognized is that "the legislature has the plenary power not only to grant or withhold the right to exercise the power of eminent domain, but also to define the quantum of interest or estate which may be acquired, whether an easement or the fee or some estate intermediate these two, * * * The interest taken depends always on the construction of the statute authorizing the taking." 18 Am. Jur., p. 740, Sec. 114 and authorities therein cited. See also *Town of Morganton v. Hutton,* 251 N. C. 531, 112 S. E. (2d) 111.

The language of the court in the case of *United States Pipe-Line Company v. Delaware, etc. R. Co.,* 62 N. J. L. 254, 41 A. 759, 761, 42 L. R. A. 572, is quite applicable, *viz.*:

"The power of the legislature to endow companies organized for public purposes with the capacity to acquire lands under the right of eminent domain is undisputed. * * * It is within the power of the legislature, in authorizing land to be condemned for a public use which may be permanent, to determine what estate therein shall be taken, and to authorize the taking of a fee, or any less estate, in its disccretion.

Where a statute authorizes the taking of a fee, it cannot be held invalid, or that an easement only was acquired thereunder, on the ground that an easement only was required to accomplish the purpose which the legislature had in view. That is a legislative, and not a judicial, question." Citing authorities.

In the case of *Greenwood County v. Watkins,* 196 S. C. 51, 12 S. E. (2d) 545, 548-549, interpretation of the statute authorizing condemnation and the question of the title acquired thereunder were involved. It was held that the County acquired a fee simple title and in its decision the Court said:

"Judges are not to mould the language of statutes in order to meet an alleged convenience or an alleged equity; are not to be influenced by any notions of hardship, or of what in their view is right and reasonable or is prejudicial to society; are not to alter clear words, though the legislature may not have contemplated the consequences of using them; are not to tamper with words for the purpose of giving them a construction which is supposed to be more consonant with justice than their ordinary meaning.

"All proceedings in statutory actions are limited by the specific power granted by the statute, the words of which must be construed in their legal and commonly accepted meaning.

"* * * It necessarily follows that under the provisions of Act No. 236 of 1933, hereinbefore quoted, Greenwood County was given the right to acquire the fee-simple title to any land deemed necessary or convenient in making this development. It is not disputed that Greenwood County, in condemning this particular land, deemed it necessary to acquire the fee. I think it obvious that it was important to Greenwood County to acquire the fee in this particular property, if it had the power to do so."

In clear and explicit language the Legislature of South Carolina has granted the defendant the right to acquire a fee simple title by condemnation and the plaintiff has shown

nothing to justify the Court in denying the defendant this right.

The good faith of defendant's acts is demonstrated by undisputed testimony that 92 per cent of the land required up to contour line 230 has been purchased by the defendant in fee simple and that it resorted to condemnation as a means of acquiring the land of plaintiff and that of the owners in the three other cases hereinabove referred to, because they refused to sell a fee simple title. Allegations of the Complaint that "the defendant's condemnation above the 220 foot elevation contour line, above mean sea level is cloaked with a scheme to serve its own private purposes, uses and advantages in that it intends to sell, lease or otherwise control the land surrounding the impounded waters for purposes not connected with the generating of electricity or proper adjuncts thereto," are wholly unsupported by evidence.

With reference to plaintiff's contention that an easement or flowage rights are all that is necessary in the operation of defendant's plant, the testimony submitted overwhelmingly and without contradiction establishes that absolute control by the defendant of the land riparian to the lake and for some distance adjacent to the shoreline is necessary to the proper maintenance and operation of the power plant, and that such control is reasonably necessary up to contour line 230. Among important reasons advanced therefor are these: in order to assure protection from contamination of the water and the consequent serious injury to plant facilities and equipment; to avoid temperature changes and diversion of the lake water with consequent adverse effects on the economy and efficiency of plant operation; to permit anticipated expansion of plant capacity in the future; and to permit compliance with public health laws controlling conditions on and around ponded waters, as well as other reasons not necessary to be here enumerated. After careful consideration of the record I am convinced and find that there has not only been no bad faith or abuse of discretion shown on the part

of defendant in its proposal to condemn plaintiff's land in fee simple, but on the other hand the absence of bad faith and abuse of discretion has been affirmatively established by the defendant's testimony.

The plaintiff has assailed the constitutionality of Section 24-12 of the Code upon the grounds that the defendant has no right under Section 17 of Article I and that the only authority in the Constitution for condemnation of private property is contained in Article 9, Section 20, which authorizes condemnation by corporations only of right of way privileges. This position is untenable. The same sections of the Constitution were assailed in the case of *Riley v. Charleston Union Station Company, supra,* and were overruled. Therein it was held that a private corporation organized for the erection of a union depot with its connecting facilities, is a corporation organized for a public use, so that the provision in the Act authorizing it to condemn land is not unconstitutional. Thus, for more than half a century the right of a private corporation to condemn land for public use has been recognized and followed.

In the case of *Haig v. Wateree Power Company,* 119 S. C. 319, 112 S. E. 55, 57, in discussing the right of eminent domain, the Court had this to say:

"That right is based upon the theory that when the state originally granted lands to individuals the grant was made under the implied condition that the state might resume dominion over the property whenever the interest of the public or welfare of the state made it necessary. Its origin antedates constitutional provisions and legislative enactments. It is one of the unwritten laws of all civilized nations. It is justified by the fact that the right of individuals must yield to the public good, and the welfare of the state is paramount to that of the individual citizen. It is a previously existing universal law that lay dormant in the state until proper legal authorities directed the occasion and the mode through which it may become operative. Under article 10, sections

3292s to 3305, inclusive, the General Assembly has directed the occasion and the manner of taking the property of a citizen and converting it into public use for the benefit of all the people and the welfare of the state."

In the more recent case of *Jennings v. Sawyer,* 182 S. C. 427, 189 S. E. 746, 750, the Court said:

"The primary right to acquire rests in eminent domain, and that power resides in the state of right and by necessity; the Constitution did not create it, but has only affirmed it (article 14), and limited its exercise (article 1, § 17; article 9, § 20). The exercise of the right resting in the Legislature, that body may prescribe how it shall be exercised." Citing authority.

Plaintiff's allegation "that, if the defendant is allowed to proceed with its condemnation proceedings the plaintiff will be deprived of his land without due process of law and in violation of the Constitutions of the State of South Carolina and the United States of America", is without support. Moreover, it has often been decided that the statutory condemnation procedure for meeting the requirements of payment of just compensation satisfies State and Federal Constitutional requirements of due process of law, Const. art. 1, § 5; U. S. C. A. Const. Amend. 14.

Without further discussion or citation of authorities, it is sufficient to say that I find no merit in the questions presented by plaintiff upon constitutional grounds; all of them have, in my opinion, been decided adversely to his contentions.

As previously pointed out this action was instituted under the Declaratory Judgment Act without asking for permanent injunctive relief, whereas the plaintiff's cause of action, as long established in this jurisdiction, is the form of an ordinary action for a permanent injunction against condemning the land. The agreement of counsel for the parties made at the hearing of defendant's motion to dismiss, to the effect that the case would be treated, tried, and adjudicated

as an action for a permanent injunction, converted it into such an action, and it has been so tried and is being so adjudicated.

After careful consideration of the pleadings and evidence respecting the matters under inquiry, I am convinced that the defendant needs and is entitled to condemn the fee simple title to the land described in the Notice in Condemnation involved herein and I so find; accordingly, it is,

Ordered and adjudged that the plaintiff is not entitled to enjoin the condemnation of his land sought to be condemned by the defendant; that the temporary restraining order hereinbefore issued is dissolved; and that the plaintiff's complaint be and hereby is dismissed.

And it is further ordered that the defendant be and hereby is authorized and empowered to forthwith proceed with the condemnation of the fee simple title to said land in the proceeding entitled *"Ex Parte Carolina Power & Light Company, In re: Condemnation of lands of W. Albert Atkinson et al."*