18779

John H. KUNKLE, Respondent, v. SOUTH CAROLINA ELEC-
TRIC AND GAS CO., Appellant

(161 S. E. (2d) 163)

*Messrs. Harley & Parr,* of Newberry, and *Edward C. Roberts,* of Columbia, *for Appellant,*

*Messrs. Pope & Schumpert* and *E. Maxcy Stone,* of New-
berry, *for Respondent,*

*Messrs. Harley & Parr,* of Newberry, and *Edward C. Roberts,* of Columbia, *for Appellant, in Reply,*

April 11, 1968.

Rehearing Denied May 1, 1968.

LEWIS, Justice.

This is an action under Section 10-2401 of the 1962 Code of Laws to quiet title to a tract of land containing 291.2 acres, known as Werber Bottoms, located on the Saluda River, in Newberry County, and involves a determination of the extent of the estate owned therein by the defendant-appellant, South Carolina Electric & Gas Company. This appeal is from an order of the lower court holding that defendant only owns an easement in the lands and that plaintiff-respondent owns the fee.

At the outset, the plaintiff has moved to dismiss the appeal upon the grounds that (1) defendant's exceptions violate Rule 4, Section 6, of the Rules of this Court and (2) the defendant's brief contains statements of factual matters not properly included therein. We have no difficulty in determining from the exceptions and the

briefs the issues to be decided and the results of our decision on the merits of the appeal eliminates any possible prejudice to plaintiff from the challenged portions of the brief. The motion to dismiss is accordingly denied.

The property in question was formerly owned by the late John J. Dominick. In 1933, the Lexington Water Power Company (hereinfater called Lexington), a public utility, acquired, through condemnation, rights in the land in connection with the construction and maintenance of a dam and reservoir on the Saluda River. The defendant is the successor to Lexington and owns such interest in the land as was acquired in the 1933 condemnation proceeding. It is conceded that the title so acquired was either an easement in the land or a fee simple title thereto.

After the acquisition of the rights in the land by Lexington, Mr. Dominick died and plaintiff purchased such interest of the estate as remained in the property. He was given a written sales contract on December 10, 1949 and subsequently a deed on March 24, 1951. The deed was adequate to convey the fee, but was "subject however to whatever right, title, interest and privileges the Lexington Water Power Company may have" acquired therein by condemnation in 1933.

Therefore, any title of plaintiff to the land is subject to such interest as may be owned therein by defendant as the successor to Lexington, and the extent of the title or interest of defendant depends upon the estate acquired by Lexington under the 1933 condemnation proceeding. If Lexington acquired the fee, defendant now owns the fee and plaintiff has no interest in the land. If Lexington acquired only an easement, plaintiff owns the fee subject to such easement. The parties are in agreement as to the foregoing. They differ however as to the extent of the estate acquired by Lexington in 1933.

The question to be decided then is: What estate or title did Lexington acquire in the lands in question under the

1933 condemnation proceedings—an easement or a fee simple title.

The parties disagree as to whether Lexington had the statutory authority to acquire by condemnation a fee simple title. This, of course, is governed by the statutes in effect in 1933. Plaintiff contends that under Sections 8454-8467, 1932 Code of Laws, made applicable to all electric power companies by Sections 8540 and 8531 of the 1932 Code, the interest which Lexington could acquire by condemnation was specifically limited to an easement. There can be no doubt that, if these statutes governed the right of Lexington to condemn, plaintiff's position is correct.

Defendant contends on the other hand that Lexington was granted the right to condemn the fee by Act No. 463 of the 1927 Acts of the General Assembly, 35 Stat. 956, and also under the license granted to it by the Federal Power Commission. This act, after granting to Lexington the right to acquire by purchase or condemnation the necessary lands for the construction and maintenance of a dam and reservoir on the Saluda River, provided that the power of condemnation conferred upon Lexington should be exercised under the general condemnation statutes, hereinabove referred to, "except that upon final determination, of the condemnation proceedings title in fee to all lands so condemned shall thereupon be vested in Lexington Water Power Company, its successors and assigns." Defendant takes the position that the quoted portion of the above act removed Lexington from the general statutory provisions limiting the estate to be condemned to, that of an easement, and granted to it the power to condemn the fee. The same power is claimed under the license granted to Lexington by the Federal Power Commission.

While plaintiff questions the constitutionality, and, in any event, the applicability of Act No. 463, we assume, only for the purposes of this decision, that at the time of the condemnation proceeding in 1933 Lexington had the authority to condemn the fee; for, irrespective of the existence of such right, we do not think that it was exercised in this case.

Statutes authorizing the acquisition of a fee simple title by condemnation do not mean that in every instance of the exercise of such power the fee is acquired. We pointed out in *Atkinson v. Carolina Power & Light Co.,* 239 S. C. 150, 121 S. E. (2d) 743, that where the authority is granted to condemn the fee, whether the fee is condemned, or some less estate, is optional and rests within the discretion of the condemnor, subject to review by the courts in case of fraud, bad faith, or abuse of discretion.

Since the exercise of the right to condemn the fee was optional, it was necessary that the condemnation proceeding show the interest or estate sought to be acquired. Otherwise, the landowner would have no adequate notice of the extent of the taking. 27 Am. Jur. (2d) Eminent Domain, Section 396; Nichols on Eminent Domain, Section 26.11.

Therefore, the interest acquired by Lexington depends upon the proper construction to be placed upon the 1933 condemnation proceeding. The first step in these proceedings was the service of a notice on the then owners of the subject lands stating that Lexington, under and by virtue of the laws of South Carolina, had the authority to construct and maintain a dam or dams across the Saluda River and was empowered to acquire by purchase or condemnation all lands which may be overflowed by the construction of the dam or as may be within the flood area thereof and all other lands used or useful in the construction and maintenance of said dams, and that Lexington required "for its public and corporate purposes" the "tracts of land" in question, followed by a description thereof by boundaries and by reference to an attached plat. The owners were required to signify, in writing, their refusal or consent to the acquisition of the lands by Lexington within thirty days thereafter.

The landowners refused to give their consent and Lexington then filed a petition with the court to be allowed to proceed with the acquisition of the property. This petition stated (1) that Lexington was empowered by the laws of

South Carolina to construct a dam or dams across Saluda River and "to occupy, control, condemn and acquire in fee simple, lands used or useful for said purposes"; (2) that Lexington "requires for the public purpose aforesaid" the described "lands of the above named landowners"; and (3) that the "lands above described" were necessary for use in the construction and maintenance of the dam and reservoir.

Upon the foregoing petition, an order was issued by the court directing that a jury be empaneled "to ascertain the compensation for the taking and using the lands described in the said petition," followed by a notice to the parties that a jury would be drawn and summoned by the clerk of court on a stated date for the purpose of determining the amount of compensation to be paid to the landowners "for the taking and using of the lands."

The jury so empaneled by the clerk fixed the compensation to be paid at the sum of $7,275.00. Both Lexington and the landowners appealed from the foregoing finding to the Court of Common Pleas. Upon a trial de novo in the Court of Common Pleas, a jury fixed the "amount of compensation which shall be paid by Lexington Water Power Company to the owners of the within described land for condemnation thereof as Fifty-five Hundred and no/100 Dollars." The latter amount was paid to the owners.

The foregoing constitutes the pertinent parts of the 1933 condemnation proceeding. It will be seen that, although there were allegations relative to Lexington's claimed authority to condemn and acquire a fee simple title to lands used in connection with the construction and maintenance of the dam on the Saluda River, there was no specific notice that the fee was being condemned or acquired in the lands in question. The only notice to the landowners was that Lexington required "the lands" for the construction and maintenance of its dam and reservoir.

The defendant takes the position, however, that notice to the landowner that his described "lands" were being ac-

quired constituted notice of an unqualified taking of all interests in the land, including the fee simple title.

The fact that the property to be taken was described as "the lands" does not necessarily mean that the fee was being acquired. The word "land" may include any estate or interest in land; and may mean an easement as distinguished from the fee, if such is consistent with the intent of the parties. (Cases defining the term as here used are collected in Words & Phrases, Land, pp. 285-288.) Therefore,the fact that the landowner was given notice that his described "lands" were being condemned did not constitute, as contended by defendant, an unqualified notice that the fee was being taken.

The present record contains no, showing as to whether the amount paid to the landowner in 1933 represented the then market value of the entire interest in the tract.

An examination of the proceeding fails to reveal with any degree of certainty the extent of the estate acquired by Lexington in the lands. The interest taken in the lands is left in doubt. In construing the proceedings to determine whether the fee was acquired, it will not be assumed, in case of doubt, that more was taken than was reasonably necessary to accomplish the public purpose, since, as stated in Atkinson, "to take more than reasonable necessity requires is to appropriate private property to private use."

The lands in question are not in the reservoir created by the construction of the dam and are only flooded occasionally. The record before us clearly shows that the acquisition of the fee in the lands in question was not necessary for the construction and maintenance of the dam, and that an easement was all that was actually necessary to carry out the public improvement.

Therefore, since the 1933 condemntion proceeding did not specify the interest or estate to be taken in the lands, and it was optional whether the fee or an

easement would be taken, only an easement was acquired since clearly an easement would adequately serve the proposed use.

The lower court held that the defendant had an easement "to flood" the lands "and to clear timber within 100 feet from the water's edge." The defendant excepts to the finding so limiting its rights, as having no basis in the record. We agree. No, where in the condemnation proceeding was any such limitation placed upon the rights acquired over the lands or any mention of the right to clear timber. The easement acquired was described in general terms as the right to use the property in the construction and maintenance of the dam and reservoir. The judgment of the lower court is therefore so modified.

Finally, defendant contends that plaintiff failed to establish possession of the lands necessary to maintain an action to quiet title under Section 10-2401 of the 1962 Code of Laws. This section is as follows:

"Any person in possession of real property, by himself or his tenant, or any person having or claiming title to vacant or unoccupied real property may bring an action against any person who claims or who may or could claim an estate or interest therein or a lien thereon adverse to him for the purpose of determining such adverse claim and the rights of the parties, respectively."

The property in question is low-lying woodland. While the issue of possession was in dispute, there was testimony to the effect that plaintiff went into possession of the property when he purchased it in 1949, which was evidenced by cutting timber on the land, posting "No trespassing" signs, pasturing cattle there, and renting the land to others for several years. The evidence amply sustains the finding of the lower court that plaintiff's possession was sufficient to maintain the action under Section 10-2401.

The fact that plaintiff's possession was subject to the defendant's easement would not preclude plaintiff from maintaining the action to quiet title. 74 C. J. S. Quieting Title, § 32c.

Irrespective however, any lack of possession by plaintiff would not deprive the court of jurisdiction to determine the issues. Upon the service of the complaint, the defendant filed a counterclaim and "cross-complaint" in which it asserted its own title and asked that it be confirmed. Since defendant sought by counterclaim to quiet title in itself, any defect in jurisdiction arising from plaintiff's lack of possession was supplied and all issues relating to title were before the court for determination. 74 C. J. S. Quieting Title § 31; *Mid American Oil Co. v. Windus*, 178 Kan. 499, 290 P. (2d) 102.

The foregoing conclusions render it unnecessary to consider the other questions argued.

Affirmed as modified.

Moss, C. J., and Bussey, Brailsford and Littlejohn, JJ., concur.

## ORDER

### On Petition for Rehearing

*Per Curiam.*

The petition for a rehearing is denied.

Appellant argues that the opinion in this case was based upon a ground not raised by the record. It is true that our decision was reached upon a ground different from that upon which the order of the lower court was based. However, this was proper under Rule 4, Section 8 of the Rules of this Court.

The basis of our decision was a ground "appearing in the record" and so recognized by appellant in its brief. At page 26 of appellant's brief it was stated:

"The question, then, is whether the pleadings in the condemnation suit reveal that the Lexington Water Power

Company requistitioned and took a fee simple interest in the lands."

The opinion in this case simply answered appellant's question upon the basis of the record in the 1933 condemnation proceeding. We refused to presume that the fee was acquired when there was a total and complete absence of any showing in the condemnation suit that the fee was either sought or necessary.