558 S.E.2d 902

Robert W. BINKLEY and Susan B. Binkley, Respondents,

v.

RABON CREEK WATERSHED CONSERVATION DISTRICT
OF FOUNTAIN INN, South Carolina, Appellant.

Robert W. Binkley and Susan B. Binkley, Respondents,

v.

John Burry; Haynsworth, Marion, McKay & Guerard, LLP;
Donald A. Harper; Greenville County; and Fant
Engineering & Surveying Co., Inc., Defendants,

and

Haynsworth, Marion, McKay & Guerard,
LLP, Third–Party Plaintiff,

v.

Rabon Creek Watershed Conservation District of
Fountain Inn, South Carolina, Appellant.

John N. Lopresti and Janice M. Lopresti, Plaintiffs,

v.

John Burry, Rabon Creek Watershed Conservation District of
Fountain Inn, South Carolina, Everette H. Babb, Fredrick E.
Landrith, Landrith Surveying, Inc., and Greenville County,
Defendants.

Steven W. McConnell, Plaintiff,

v.

John Burry, Rabon Creek Watershed Conservation
District of Fountain Inn, South Carolina, and
T.H. Walker, Jr., Defendants.

David Hearn and Debbie Hearn, Plaintiffs,

v.

Timothy Farr, John Burry, and the County of
Greenville, South Carolina, Defendants.

Robert W. Binkley and Susan B. Binkley, Respondents,

v.

John Burry; Haynsworth, Marion, McKay & Guerard, LLP;
Donald A. Harper; Greenville County; and Fant
Engineering & Surveying Co., Inc., Defendants,

and

Haynsworth, Marion, McKay & Guerard,

LLP, Third–Party Plaintiff,

v.

Rabon Creek Watershed Conservation District of
Fountain Inn, South Carolina, Appellant.

Mitchell and Rebecca King and Arlin
and Maxine Verley, Plaintiffs,

v.

John Burry, Rabon Creek Watershed Conservation District of
Fountain Inn, South Carolina; The United States of America;
The United States Department of Agriculture; The County of
Laurens; The Laurens Soil and Water Conservation District;
The County of Greenville; and The Greenville County Soil and
Water Conservation District, Defendants,

of whom John Burry and Rabon Creek Watershed Conservation
District of Fountain Inn, South Carolina are Appellants,

and

John N. Lopresti, Janice M. Lopresti, Steven W. McConnell,
David Hearn, Debbie Hearn, T.H. Walker, Jr., Timothy Farr,
Robert W. Binkley, Susan B. Binkley, Haynsworth, Marion,
McKay & Guerard, LLP, Donald A. Harper, Mitchell and Re-
becca King and Arlin and Maxine Verley are Respondents.

No. 3411.

Court of Appeals of South Carolina.

Heard Oct. 3, 2001.
Decided Nov. 19, 2001.
Rehearing Denied Feb. 6, 2002.

60

Andrew F. Lindemann, of Davidson, Morrison & Lindemann, of Columbia; and John R. Devlin, Jr., of Greenville; for Rabon Creek Watershed Conservation District of Fountain Inn, SC; and W. Francis Marion, Jr., of Haynsworth, Marion, McKay & Guerard, of Greenville, for John Burry, appellants.

David L. Thomas, of Greenville, for David Hearn and Debbie Hearn; Michael S. Chambers, of Greenville; and Keith M. Babcock, of Lewis, Babcock & Hawkins, of Columbia, both for John N. Lopresti, Janice M. Lopresti, Robert W. Binkley and Susan B. Binkley; Samuel W. Outten, of Leatherwood, Walker, Todd & Mann, of Greenville, for Timothy Farr; H.W. Pat Pascal, Jr., of Miller & Paschal, of Greenville, for Steven W. McConnell, Mitchell and Rebecca King, Arlin and Maxine Verley; John E. Johnston, of Leatherwood, Walker, Todd & Mann, of Greenville, for Haynsworth, Marion, McKay & Guerard, LLP; H. Michael Spivey, of Mauldin, for T.H. Walker, Jr.; Donald A. Harper; and N. Heyward Clarkson, of Clarkson, Fortson, Walsh & Rheney, both of Greenville, for Donald A. Harper, respondents.

William G. Walsh, of Simpsonville, for defendant Fant Engineering & Surveying Co., Inc.; John W. Howard, III, for defendant Fredrick E. Landrith, and W. Howard Boyd, Jr., of Gibbs, Gallivan, White & Boyd, for defendant Greenville County, both of Greenville; and Alexander Cruickshanks, IV, of Clinton, for defendant, Laurens County.

GOOLSBY, Judge.

In this declaratory judgment action to determine the extent and enforceability of an easement, Rabon Creek Watershed Conservation District of Fountain Inn [1] (Rabon Creek) appeals the grant of a Rule 60(b)(5) motion vacating the final order in *Binkley v. Rabon Creek* (*Binkley* I) and the consolidation of *Binkley* I with *Binkley v. Burry* (*Binkley* II) and the other present actions.

Rabon Creek further appeals, *inter alia*, the trial court's ruling in the consolidated case that it was equitably estopped from enforcing an easement against Respondents Robert and Susan Binkley, David and Debbie Hearn, John and Janice LoPresti, Steven McConnell, Mitchell and Rebecca King, and Arlin and Maxine Verley (referred to collectively as the Homeowners).

The secondary Appellant, John Burry, appeals the trial court's findings: 1) the easement extended to the top of the dam; 2) the Homeowners did not have notice of the easement; and 3) Rabon Creek may enforce the easement against Burry but not against the Homeowners. We affirm in part and reverse in part.

## FACTUAL/PROCEDURAL BACKGROUND

In the summer of 1976 John Burry bought 172 acres of land from the Gray family. Burry paid $650 an acre for the land known as tract 34. Two months later three men representing the Rabon Creek Watershed Conservation District asked Burry if he would sign an easement for the construction of a dam and the impoundment of water to create Lake Beulah. Burry signed the agreement in October 1976. Rabon Creek duly recorded the easement.

After the dam was built, the resulting lake covered part of tract 34. Burry subdivided the remaining property into lots and sold lakefront lots for approximately $20,000 an acre.

---

1. Rabon Creek Watershed Conservation District is a governmental subdivision pursuant to S.C.Code Ann. Section 48–11–10(1) (Supp. 2000).

The Homeowners all purchased or constructed residences on lots previously owned by Burry and within the easement claimed by Rabon Creek.[2]

On Friday, August 25, 1995, it began to rain. Homeowner Steve McConnell awoke around 4:00 a.m. to discover the LoPresti's home next door was flooding.

The water reached McConnell's home around 5:30 a.m. McConnell ultimately had five feet of water on his first floor. Like McConnell and the LoPrestis, the other Homeowners in this action all experienced flooding from this storm.

After the flood, the Homeowners filed individual actions against parties including: John Burry, Rabon Creek, land surveyors, and their respective closing attorneys.[3]

In June 1996 the Binkleys filed an action against Rabon Creek alleging the easement did not give Rabon Creek the right to flood their property and seeking, *inter alia*, declaratory and injunctive relief to prevent Rabon Creek from flooding the property in the future.

Rabon Creek and the Binkleys moved for summary judgment on the interpretation of the easement. In December 1996 Judge Kittredge granted summary judgment to Rabon Creek, finding it held an easement extending to the top of the dam. Judge Kittredge's order stated the parties consented to dismiss all remaining claims and defenses with prejudice and to waive the right to appeal the order.

The Binkleys subsequently filed *Binkley* II in which they named John Burry, Haynsworth, Marion, McKay & Guerard

---

2. Not all Homeowners purchased directly from Burry.

 The Binkleys purchased three lots in 1991 and constructed a lakefront home. The Hearns also built a lakefront home. The LoPrestis purchased an already-completed lakefront residence in 1994. The McConnells purchased a lakefront lot in 1992 and constructed a residence. They moved into their home in January 1995.

 The Kings and the Verleys purchased lots and constructed residences. Mitchell King's father, an attorney, performed a title check for his son and discovered the easement but concluded it only burdened the edge of his son's property.

3. John and Janice LoPresti filed an action against Rabon Creek and others in February 1996. Steven McConnell filed an action in December 1995. The Hearns filed an action in December 1996. The Kings and the Verleys filed an action in August 1997.

(Haynsworth Marion), Donald Harper, Greenville County, and Fant Engineering & Surveying as defendants. Haynsworth Marion impled Rabon Creek as a third-party defendant. The court consolidated *Binkley* II with the actions of the other Homeowners.

In August 1997 the Binkleys moved to set aside Judge Kittredge's order in *Binkley* I pursuant to Rule 60(b)(5), SCRCP, arguing it was no longer equitable that the judgment should have prospective application and inconsistent and inequitable results and consequences could occur if they were not granted relief. Judge Kittredge denied the motion.

In December 1997 the Binkleys moved for reconsideration. On October 2, 1998, Judge Kittredge granted the motion. He set aside the judgment in *Binkley* I and consolidated *Binkley* I with *Binkley* II. Rabon Creek appeals this order.

In the combined actions, Judge Kittredge granted summary judgment regarding the existence of an easement but denied summary judgment regarding the scope of the easement and the affirmative defenses to its enforcement, including equitable estoppel.

Following a non-jury trial solely on the extent and enforceability of the easement, the trial court held: 1) the language of the easement was ambiguous, but other evidence demonstrated the parties intended for the easement to extend to the top of the dam; 2) the Homeowners did not have actual or constructive knowledge that Rabon Creek claimed an easement to the top of the dam; and 3) Rabon Creek was equitably estopped from enforcing the easement against the Homeowners. The trial court found the Homeowners relied upon Rabon Creek's silence in purchasing or constructing homes within the flood plain and Rabon Creek "acted recklessly in willfully failing to conduct the mandated inspections."

The trial court, however, permitted Rabon Creek to enforce the easement against Burry finding "[Burry's] testimony was not credible, and it conflicted with the credible evidence regarding the purpose of Lake Beulah in the overall project." Rabon Creek and Burry appeal.

## LAW/ANALYSIS

### I.

 Rabon Creek contends the language of the recorded document creating the easement clearly and unambiguously extends the easement to the top of the dam. Burry argues the easement only extended to a fifteen-foot buffer area around the lake and did not extend to the top of the dam.

 The scope of an easement is an equitable matter in which a reviewing court may take its own view of a preponderance of the evidence.[4] The language of an easement determines its extent.[5] "Clear and unambiguous language in grants of easement must be construed according to terms which parties have used, taken, and understood in [the] plain, ordinary, and popular sense."[6] We must first decide if the language used by the grant here is plain and unambiguous and, if so, what does that language mean.

We agree with Rabon Creek. The language in question is clear and unambiguous. But does that language extend the easement to the top of the dam as Rabon Creek claims?

The recorded document states in pertinent part:

Dr. John Burry . . . does hereby grant, bargain, sell, convey, and release unto the Rabon Creek Watershed Conservation District . . . an easement in, over, and upon the following described land. . . .

The approximate location of the area involved in the easement herein conveyed as Tract No. 34 shown on a Sketch Map of Rabon Creek Watershed (Project) . . . which

4. *Tupper v. Dorchester County,* 326 S.C. 318, 323, 487 S.E.2d 187, 190 (1997) (citations omitted); *Eldridge v. City of Greenwood,* 331 S.C. 398, 416, 503 S.E.2d 191, 200 (Ct.App.1998). *But see Giles v. Parker,* 304 S.C. 69, 72, 403 S.E.2d 130, 131–32 (Ct.App.1991) (holding the determination of the width of an easement is a question at law).

5. *See Howorka v. Harbor Island Owners' Ass'n,* 292 S.C. 381, 385, 356 S.E.2d 433, 436 (Ct.App.1987); *Marlow v. Marlow,* 284 S.C. 155, 161, 325 S.E.2d 703, 706 (Ct.App.1985).

6. *South Carolina Pub. Serv. Auth. v. Ocean Forest, Inc.,* 275 S.C. 552, 554, 273 S.E.2d 773, 774 (1981).

Sketch Map is, by reference, incorporated in and made a part of this instrument.

For or in connection with the construction, operation, maintenance, and inspection of a floodwater retarding structure ... for the *flowage* of any waters in, *over, upon,* or through such structure; and for the permanent storage and temporary detention, either or both, of any waters that are impounded, stored, or detained by such structure.[7] (Emphases added).

The language of the easement clearly grants "flowage rights" to Rabon Creek. "Flowage rights" have been defined as "the 'private right to operate a dam and flood [flow] the property of upstream waterfront landowners' "[8] and the right to set "water back against the up stream river banks and over them to at least the level that the surface of the water is maintained at the dam."[9]

These flowage rights permit Rabon Creek to flow water "in, over, upon, or through" the dam. Obviously, if water may flow "over or upon" the dam, the easement necessarily extends at least to the top of the dam.

Furthermore, the Sketch Map, incorporated by reference into the easement, explicitly refers to the "top of the dam elevation" and includes a contour line on the map corresponding to this elevation. Although water in the lake is usually at an elevation of 700.5 feet, under the unambiguous language of the flowage easement, Rabon Creek has the right to flood land surrounding the lake up to the 724.5 foot contour line, *i.e.*, the top of the dam.

In addition, the Sketch Map contains a table listing the number of acres of Tract 34 affected by the easement. The table states 56.7 acres of Tract 34 are within the contour line corresponding to the top of dam elevation and thus encumbered by the easement. The only possible reason to include

---

7. The same type of Natural Resources Conservation Service (NRCS) easement form at issue in this case was used across the country.

8. *Trask v. Pub. Util. Comm'n,* 731 A.2d 430, 433 (Me.1999) (citation omitted).

9. *Petition of Citizens Util. Co.,* 117 Vt. 285, 91 A.2d 687, 691 (1952).

this information in the recorded document is to describe the extent of the easement.

Indeed, easements for flowage are customarily described in terms of elevation, contour lines, and/or acreage.[10] The trial court thus erred in finding the language of the easement was vague and ambiguous. Although, as Rabon Creek argues, it was unnecessary, and in fact improper, for the trial court to take further evidence regarding the intent of the parties to the easement, the trial court correctly found the easement extended to the top of the dam.[11] Given the clear and unambiguous language granting Rabon Creek flowage rights over the dam, the easement without doubt extends to the top of the dam.

Burry's argument that the easement only extended to fifteen feet around the lake is not supported by the language of the easement itself. Also, the trial court found Burry's testimony regarding the extent of the easement was not credible.[12]

---

10. See *Atkinson v. Carolina Power & Light Co.*, 239 S.C. 150, 156, 121 S.E.2d 743, 745 (1961) ("[P]laintiff herein admits that the defendant is entitled to condemn a flowage easement in so much of his land as will actually be used to impound water up to the 220 foot elevation contour line...."); *Thomas v. Greenville–Carolina Power Co.*, 105 S.C. 268, 269, 89 S.E. 552, 552 (1916) (involving a document granting "[t]he right to permanently overflow and damage that portion of my lands situate in said county and state lying on or near [the] Saluda river within contour line 110, as shown by plat of Lockwood, Greene & Co., made in July, 1908, and containing by estimation 22.70 acres, more or less."). *See also Hostetler v. W. Gray & Co.*, 523 So.2d 1359, 1362 (La.Ct.App.1988); *Trask*, 731 A.2d at 434 (stating flowage rights may be referred to in terms of acreage covered); *Smith Mountain Lake Yacht Club, Inc. v. Ramaker*, 261 Va. 240, 542 S.E.2d 392, 394 (2001).

11. Nonetheless, this evidence also supports the conclusion the easement extends to the top of the dam. Numerous witnesses, such as Lesley Morgan of the South Carolina Department of Natural Resources, Bill Earle, retired Soil Conservation District Manager for the Greenville County Soil and Water Conservation District, and Albert McAlister, an attorney for the Laurens County Water Resources Commission, testified the easement extended to the top of the dam.

NRCS employee Grady Adkins testified the Watershed Work Plan for the construction of the dam stated: "[e]asements will be obtained to the top of dam elevation at sites 20 and 21 and will include 715 acres."

12. In 1984 Burry challenged the extent of the area from which the NRCS could remove soil from his property for use in the construction of the dam. Burry then argued the NRCS could not remove any soil above the 724.5 foot contour line. There was testimony that Dr. Burry

Our broad scope of review in equitable actions does not require this court to disregard the trial court's credibility findings.[13]

## II.

### A.

Rabon Creek next argues the trial court erred in finding it was equitably estopped from enforcing the easement against the Homeowners. Burry appeals the portion of the trial court's ruling finding Rabon Creek is not estopped as to him.[14]

The trial court found the recorded documents failed to provide notice to the Homeowners. The issue of notice to the Homeowners of the scope of the easement lies at the very heart of this case. The first element that a party seeking to assert equitable estoppel must prove is a lack of knowledge and of the means of knowledge of the truth regarding the facts in question.[15] If the Homeowners had actual or constructive notice of the easement, they may not equitably estop Rabon Creek.[16]

---

premised this argument on the idea the easement extended to 724.5 feet and no further.

13. *See Pinckney v. Warren,* 344 S.C. 382, 544 S.E.2d 620 (2001).

14. In the alternative, Burry argues the Homeowners had notice of the easement.

15. *Southern Dev. Land and Golf Co. v. South Carolina Pub. Serv. Auth.,* 311 S.C. 29, 33, 426 S.E.2d 748, 750 (1993). The remaining elements are a reliance upon the conduct of the party estopped and a prejudicial change in position. The elements of equitable estoppel with respect to the party estopped are:

1) conduct which amounts to a false representation or concealment of material facts, or at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert;
2) intention, or at least expectation, that such conduct shall be acted upon by the other party;
3) knowledge, actual or constructive, of the real facts.
*Id.*

16. We note that because Rabon Creek is a governmental entity, it is even more difficult for the Homeowners to demonstrate they are

■ Rabon Creek contends the recording of the easement gave actual or constructive notice to the Homeowners requiring them to make inquiries about the scope of the easement. Having already determined the language of the easement was clear and unambiguous, we agree.

■ It is undisputed the easement was properly recorded in each Homeowner's chain of title. "A grant of an easement is to be construed in accordance with the rules applied to deeds and other written instruments." [17] "Notice of a deed is notice of its whole contents ... and *it is also notice of whatever matters one would have learned by any inquiry which the recitals of the instrument made it one's duty to pursue.*" [18] Property owners are charged with constructive notice of instruments recorded in their chain of title.[19] "A properly recorded title normally precludes an equitable estoppel against assertion of that title due to the requirement that the party raising the estoppel be ignorant of the true state of title or reasonable means of discovering it." [20]

To afford notice of a provision in a recorded instrument, the language must be so intelligible and significant that it would naturally raise a well-grounded suspicion in the mind of a reasonably prudent person, or a person of ordinary dili-

entitled to an equitable estoppel against it than it would be against a non-governmental party.

As a general rule, estoppel does not lie against the government to prevent the due exercise of its police power or to thwart the application of public policy. The acts of government agents acting within the scope of their authority can give rise to estoppel against the government, but unauthorized conduct or statements do not give rise to estoppel.

*Town of Sullivans Island v. Byrum*, 306 S.C. 539, 544, 413 S.E.2d 325, 328 (Ct.App.1992) (citations omitted).

17. 28A C.J.S. *Easements* § 57, at 235 (1996).

18. 66 C.J.S. *Notice* § 19, at 454 (1998) (emphasis added).

19. *Carolina Land Co. v. Bland*, 265 S.C. 98, 107, 217 S.E.2d 16, 20, (1975); *Harbison Cmty. Ass'n v. Mueller*, 319 S.C. 99, 103, 459 S.E.2d 860, 863 (Ct.App.1995); *Fuller–Ahrens P'ship v. South Carolina Dep't of Highways and Pub. Transp.*, 311 S.C. 177, 183, 427 S.E.2d 920, 923–24 (Ct.App.1993).

20. *Dressel v. Weeks*, 779 P.2d 324, 330 (Alaska 1989).

gence and understanding, sufficient to suggest an inquiry that would lead to a knowledge of the facts.[21]

 A description of an easement in a recorded document is sufficient when it contains language that acts as a guide to the location of the easement on the land such that the easement is "capable of being rendered to a certainty [by reference] to something extrinsic ... to which it refer[s]." [22] As discussed above, the Sketch Map included the elevation of the dam, a map showing the approximate location of a contour line corresponding to the elevation of the dam, and an acreage table listing the number of acres affected by the easement.

 A surveyor armed with this information could have located the easement on a homeowner's property. "It is not essential to the validity of a grant of an easement that it be described by metes and bounds or by figures giving definite dimensions of the easement." [23] This is particularly true of flowage easements.

 The facts of this case do not justify a finding of equitable estoppel. The description in the easement was sufficient to place the Homeowners at the very least on constructive notice of its extent. We conclude, therefore, that the Homeowners failed to meet the first element of equitable estoppel—lack of knowledge of the extent of the easement and of the means by which to obtain knowledge. "One with knowledge of the truth or the means by which with reasonable diligence he could acquire knowledge cannot claim to have been mis[led]." [24]

---

21. *Fuller–Ahrens,* 311 S.C. at 183, 427 S.E.2d at 924 (citation omitted).

22. *See Allen v. Duvall,* 311 N.C. 245, 316 S.E.2d 267, 270 (1984); *Stines v. Willyng, Inc.,* 81 N.C.App. 98, 344 S.E.2d 546, 547 (1986). *See also Lake View Acres Dev. Co. v. Tindal,* 306 S.C. 477, 480, 412 S.E.2d 457, 459 (Ct.App.1991) (stating in construing deeds, "it is elementary 'that boundaries govern acreage and inaccuracies relating to the area of a tract are generally immaterial if the description clearly identifies the land conveyed and its boundaries' ") (citation omitted).

23. 28A C.J.S. *Easements* § 54, at 233 (1996).

24. *Southern Dev.,* 311 S.C. at 34, 426 S.E.2d at 751.

## B.

 The Homeowners argue also that Rabon Creek's silence during the construction of their homes amounted to a misrepresentation. The Homeowners contend contracts between Rabon Creek, the United States Department of Agriculture, Greenville County Soil and Conservation District, and Laurens County Water and Soil Conservation District for periodic inspections of the dam established a duty on the part of Rabon Creek to inform the Homeowners that they were building homes within the flood plain.[25] The trial court agreed.

In support of their argument, the Homeowners cite *Southern Development Land and Golf Company v. South Carolina Public Service Authority* for the proposition that "[s]ilence, when it is intended, or when it has the effect of misleading a party, may operate as equitable estoppel." [26] Their reliance on *Southern,* however, is misplaced. *Southern* did not address estoppel asserted by a party with actual or constructive notice from a properly recorded instrument. Our supreme court addressed that situation in *South Carolina State Highway Department v. Metts.*[27]

In *Metts,* landowners claimed the Highway Department's failure to object and inform them that a service station island and gas pumps lay within the Highway Department's easement estopped the Department from asserting any right to the easement.

The supreme court disagreed, finding the Department properly recorded the easement and the landowners were charged with constructive knowledge of its existence. The court noted there was no "action [by the Department] tending to misrepresent the actual state of facts to appellants or evidencing an intent to abandon a portion of [the easement]." [28] The court

---

25. One of the contracts states that Rabon Creek will "[p]rohibit the installation of any structure or facilities that will interfere with the operation or maintenance of the project measures."

26. 311 S.C. 29, 33, 426 S.E.2d 748, 751 (1993).

27. 270 S.C. 73, 240 S.E.2d 816 (1978).

28. *Metts,* 270 S.C. at 76, 240 S.E.2d at 818.

also stated "[t]he record conclusively shows that appellants had ample opportunity to ascertain what, if any, right of way had been conveyed over the property for highway purposes."[29]

This holding is in accord with the rule that silence after properly recording an instrument is not usually conduct justifying the imposition of equitable estoppel. "As a 'general rule ... mere silence or acquiescence will not operate to work an estoppel where the other party has constructive notice of public records which disclose the true facts.' "[30] "Because of the doctrine of constructive notice, there is little duty, *outside the avoidance of affirmative misleading acts,* which is imposed upon the holder of an interest in property, where his or her interest in the land is disclosed by the public records."[31]

In the instant case, there is no evidence Rabon Creek committed any affirmative or misleading act or concealed the true scope of the easement. In contrast to the facts in *Southern,* none of the Homeowners contacted Rabon Creek to inquire about the scope of the easement or received assurances that the homes in question were not in the flood plain.[32] Although reliance is also an element of equitable estoppel, the record contains no evidence that the Homeowners relied on Rabon Creek's contracts to inspect the dam in deciding to purchase or construct homes or that the contracts somehow induced the Homeowners to do so.[33] Not a single Homeowner

---

29. *Id.*

30. *Dressel,* 779 P.2d at 331 (citation omitted).

31. 28 Am.Jur.2d *Estoppel and Waiver* § 100, at 524 (2000) (emphasis added).

32. Prior to purchasing property for development, Southern contacted Santee Cooper and received assurances that no exposed power lines would be on the property. This information was incorrect as Santee Cooper had already finalized plans to construct overhead high voltage, transmission towers and lines on the property. Significantly, these plans were not matters of public record. Southern filed suit claiming it relied on Santee Cooper's assurances in deciding to purchase the property.

33. Steve McConnell testified he did not even know of Rabon Creek's existence at the time he built his home. Mitchell King merely testified he had no knowledge his home lay within an easement and he never contacted Rabon Creek. This testimony does not support a finding that

testified he or she even knew of Rabon Creek's contracts. At oral argument, counsel for the Homeowners conceded none of the Homeowners knew of the contracts when they purchased lakefront property.

Moreover, Rabon Creek's silence did not discourage the Homeowners from conducting a title search to locate the easement or from hiring a surveyor to determine where the easement fell on each property. "When a landowner has actual or constructive notice of a matter, and does not show any misrepresentation or concealment by the government, estoppel will not lie against the government." [34]

Although it is regrettable that the Homeowners suffered property damage because their homes were located within a flood easement, the trial court erred in finding Rabon Creek was equitably estopped from enforcing the easement against the Homeowners.[35]

## CONCLUSION

To summarize, we reverse the trial court's findings that the recorded easement was ambiguous and Rabon Creek was equitably estopped from enforcing the easement against the Homeowners. We affirm the trial court's findings that the easement extends to the top of the dam and that Rabon Creek may enforce the easement against Burry.

Because we reverse the trial court's findings regarding equitable estoppel, it is unnecessary for us to further address Rabon Creek's argument that the court decided issues of negligence not properly before it, and we make no findings as to whether Rabon Creek breached contracts with the United

---

the Homeowners relied on Rabon Creek's conduct or alleged contractual duty to speak.

**34.** *Town of Sullivans Island v. Byrum*, 306 S.C. at 544, 413 S.E.2d at 328.

**35.** *See also South Carolina Pub. Serv. Auth. v. Ocean Forest, Inc.*, 275 S.C. 552, 554–55, 273 S.E.2d 773, 774 (1981) (rejecting equitable estoppel when easement was recorded and there was no evidence of misrepresentation or concealment); *Stickney v. City of Saco*, 770 A.2d 592, 608 (Me.2001) ("Equitable estoppel should be 'carefully and sparingly applied.' ") (citation omitted).

States Department of Agriculture and others.[36] It is also unnecessary for us to review the propriety of the grant of the Rule 60(b) motion in *Binkley* I.[37]

### AFFIRMED IN PART AND REVERSED IN PART.

HUFF and STILWELL, JJ., concur.

---

**36.** This court will not issue advisory opinions that have no practical effect on the outcome. *See Springob v. Farrar*, 334 S.C. 585, 592, 514 S.E.2d 135, 139 (Ct.App.1999).

**37.** *But see Tench v. The South Carolina Dep't of Educ.*, 347 S.C. 117, 120–22, 553 S.E.2d 451, 453 (2001) (stating relief from judgment under Rule 60, SCRCP, is not a substitute for appeal) (citing *Smith Companies of Greenville v. Hayes*, 311 S.C. 358, 428 S.E.2d 900 (Ct.App.1993)).