573 S.E.2d 838

Robert W. BINKLEY and Susan B. Binkley, Appellants,

v.

John BURRY, Haynsworth, Marion, McKay & Guerard, LLP, Donald A. Harper, Greenville County and Fant Engineering & Surveying Co., Inc., Defendants,

Of whom Haynsworth, Marion, McKay & Guerard, LLP is Respondent,

and

Haynsworth, Marion, McKay & Guerard, LLP, Third–Party Plaintiff,

v.

Rabon Creek Watershed Conservation District Of Fountain Inn, South Carolina, Third Party Defendant.

No. 3558.

Court of Appeals of South Carolina.

Heard Sept. 10, 2002.
Decided Oct. 28, 2002.
Rehearing Denied Dec. 19, 2002.

Keith M. Babcock, of Columbia; Michael Stephen Chambers, of Greenville; for Appellants.

John E. Johnston, of Greenville; for Respondents.

GOOLSBY, J.:

This is a legal malpractice action. The trial court granted summary judgment to Haynsworth, Marion, McKay & Guerard, LLP (Haynsworth), holding Robert W. Binkley and Susan B. Binkley failed to file their lawsuit within the applicable limitations period. The Binkleys appeal. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

The Binkleys purchased lakefront property in the Lakeview Acres subdivision in Greenville County, South Carolina. Haynsworth conducted the closing on Lot 8, the subject property, on April 19, 1991.

On May 2, 1991, Haynsworth sent the Binkleys their deed to Lot 8 along with a letter indicating the law firm had performed a title examination of the property. According to the letter, Haynsworth concluded the Binkleys were vested with a marketable fee simple title to the premises, subject to several exceptions. Included in the list of exceptions was an "[e]asement for construction and impoundment given to Rabon Creek Watershed Conservation District recorded in Deed Book 211 at Page 657, Office of the Clerk of Court for Laurens County and Deed Book 1169 at Page 88 in the RMC Office for Greenville County." The Binkleys, however, assumed the mailing contained only the deed to their property, and Robert Binkley placed it in his safe without reading it. This letter

was apparently the only communication between Haynsworth and the Binkleys about the easement.

On August 7, 1991, the Binkleys entered into a contract for the construction of their home on Lot 8. The contract noted the first floor of the home would be constructed two feet above the 100–year floodplain level. In his deposition, however, Robert Binkley conceded that, before construction of the home commenced, he was aware that the lower level of the building would be in the floodplain.[1]

On November 4, 1991, Haynsworth closed on a mortgage given by the Binkleys to American Federal Bank and secured by Lot 8. A few days before the closing, a plat had been prepared indicating the elevation of the dam spillway would be higher than the elevation of the lower level of the Binkleys' proposed home. Robert Binkley admitted he saw the plat and was aware of the elevations. Furthermore, the Binkleys signed a release at the closing that stated they knew the basement of their home was within the 100–year floodplain level. The Binkleys waived the option of flood insurance and proceeded with construction on their home.

The Binkleys subsequently purchased Lot 9 in Lakeview Acres. Lot 9 lies next to Lot 8 and is also lakefront property. Haynsworth performed the closing on March 2, 1992. This time, however, Haynsworth did not conduct a title search on the property.

In August 1995, heavy rains caused water impounded by the Rabon Creek Watershed District to back up onto the Binkleys' property and flood the basement of their home. After the flood, Rabon Creek informed the Binkleys and other home-owners affected by the rain that it claimed an easement to the top of the dam and set out flags to indicate the boundary lines of the easement around the lake. The pin locations indicated that the easement claimed by Rabon Creek covered all of Lot 8 and almost all of Lot 9. It was only after the flood that the Binkleys read the letter from Haynsworth advising them of the easement that encumbered Lot 8.

---

1. Robert Binkley also admitted that, when he looked at Lot 8, he understood there was a dam close by that was owned by a public entity and the land upstream from the dam could be flooded "up to probably the spillway."

On June 7, 1996, the Binkleys sued Rabon Creek. In addition to damages, the Binkleys sought a declaratory judgment regarding the extent and enforceability of the easement. (*Binkley I*) Rabon Creek counterclaimed for a declaratory judgment, asking the court to construe the easement and determine its extent.

Both sides moved for summary judgment on the interpretation of the easement agreement. The trial court, Judge Kittredge presiding, held a hearing on the motions on September 17, 1996. On December 23, 1996, Judge Kittredge issued an order on the motions holding (1) the language of the easement was ambiguous as to its extent and scope, thus necessitating resort to the intention of the parties to the easement; (2) the parties intended the easement to allow Rabon Creek to "store" water to create a lake level of 700.5 feet; and (3) during periods of heavy rain, Rabon Creek could allow the "flowage" of water up to and over the top of the dam to an elevation of 725.2 feet.[2] The order further noted that "[v]arious issues remain to be determined," such as the Binkleys' contention that Rabon Creek should not be allowed to enforce the easement for equitable reasons. Pursuant to Rule 54(b) of the South Carolina Rules of Civil Procedure, final judgment was entered to the extent of the issues decided by the order.[3] By consent of the parties, all remaining claims and defenses were dismissed with prejudice.

On February 27, 1997, the Binkleys commenced this action against Haynsworth alleging Haynsworth committed professional malpractice in "failing to disclose the existence of the [e]asement or its impact."[4] (*Binkley II*) On August 7, 1997, Judge Kittredge signed a consent order consolidating this

---

**2.** The order, however, further noted that "the spillway (assuming proper operation) will almost certainly preclude 'flowage' beyond 718 feet."

**3.** See Rule 54(b), SCRCP (stating "[w]hen more than one claim for relief is presented in an action ..., the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties").

**4.** In addition to Haynsworth, the Binkleys also named as defendants John Burry, the developer of Lakeview Acres; Donald Harper, their predecessor-in-title for Lot 9; Greenville County; and Fant Engineering and Surveying Company.

lawsuit with cases brought by other homeowners who had experienced flooding during the same event that damaged the Binkleys. This consolidation was for the limited purposes of construing the extent of the easement and considering the affirmative defenses to enforcement of the easement. On September 8, 1997, Haynsworth filed an answer, cross-complaint, and third-party complaint against Rabon Creek in *Binkley II*, alleging among other things that Rabon Creek was estopped from enforcing the easement against the Binkleys and other homeowners. Judge Kittredge issued an order on September 12, 1997, in which he granted summary judgment as to the existence of the easement but found that genuine issues of material fact existed as to its scope and extent. After a trial on the merits on February 17 and 18, 1998, Judge Kittredge issued an order on May 5, 1998, construing the easement documents and finding Rabon Creek was estopped from enforcing the easement against the homeowners, but could enforce it against John Burry, the party granting the easement.

In the meantime, on August 19, 1997, the Binkleys moved under Rule 60 of the South Carolina Rules of Civil Procedure for relief from the summary judgment order in *Binkley I* issued by Judge Kittredge on December 23, 1996. Later, on June 30, 1998, the Binkleys moved to amend their complaint to assert a claim for equitable relief based on the doctrine of estoppel and to assert causes of action against Rabon Creek based on inverse condemnation, negligence, and trespass. Finding his December 1996 order in *Binkley I* contained inconsistencies that would prejudice the Binkleys, Judge Kittredge vacated the order and, on October 2, 1998, granted the Binkleys' motion for consolidation.

Rabon Creek appealed both Judge Kittredge's order limiting its enforcement of the easement to Burry and Judge Kittredge's order vacating his order of December 23, 1996, and consolidating *Binkley I* and *Binkley II*. On appeal, this court held (1) the easement extended to the top of the dam; (2) the recording of the easement gave constructive notice to the homeowners; and (3) Rabon Creek was not equitably estopped from enforcing the easement.[5]

**5.** *Binkley v. Rabon Creek Watershed Conservation Dist.*, 348 S.C. 58, 558 S.E.2d 902 (2001).

While Rabon Creek's appeal was pending, the Binkleys' malpractice claim proceeded in the trial court. On December 7, 1998, Haynsworth moved for summary judgment, alleging the claim was barred by the statute of limitations.

On March 8, 2000, the trial court, Judge Hall presiding, held a hearing on the motion. On March 15, 2000, Judge Hall issued an order granting summary judgment to Haynsworth on the ground that the Binkleys' malpractice claim was untimely as to their purchases of both Lot 8 and Lot 9. On March 24, 2000, the Binkleys moved for reconsideration, alteration, or amendment of the judgment pursuant to Rules 59(e) and 60(b) of the South Carolina Rules of Civil Procedure. Judge Hall denied their motion by order dated April 24, 2000.

## LAW/ANALYSIS

### I. NOTICE

The Binkleys first argue that, "[b]ecause the issue of notice had been previously litigated and decided in Judge Kittredge's Order, Judge Hall erred in re-addressing this issue and deciding it in a way that is in conflict with Judge Kittredge's previous Order." In support of their position, the Binkleys contend (1) the prior pending appeal of Judge Kittredge's order divested the trial court of jurisdiction to decide this issue; (2) the findings in Judge Kittredge's prior order are the law of the case; (3) Judge Hall did not have the power to review, modify, affirm, or reverse Judge Kittredge's findings; and (4) Haynsworth was judicially estopped from adopting a position that was contrary to the position it took on that issue in the prior hearing before Judge Kittredge. We disagree with these arguments.

### A. Jurisdiction

At the summary judgment motion hearing before Judge Hall, the Binkleys argued the motion should be stayed while the appeal of Judge Kittredge's order was pending.

As noted in this court's prior opinion, Judge Kittredge's order held as follows:

1) the language of the easement was ambiguous, but other evidence demonstrated the parties intended for the ease-

ment to extend to the top of the dam; 2) the Homeowners did not have actual or constructive knowledge that Rabon Creek claimed an easement to the top of the dam; and 3) Rabon Creek was equitably estopped from enforcing the easement against the Homeowners.[6]

Once an appeal is filed, the appellate court has exclusive jurisdiction over the matter.[7] The tribunal from which the appeal is taken, however, may proceed with matters unaffected by the appeal.[8]

In contrast to the issues before Judge Kittredge, the issue before Judge Hall was whether Haynsworth's disclosure to the Binkleys of the presence of the easement put the Binkleys on inquiry notice that "some claim against another party *might* exist." [9] Because the accrual date for determining when the statute of limitations had begun to run did not depend on findings concerning the extent and enforceability of the easement, we hold Judge Hall was correct in proceeding with the summary judgment motion.

## B. Law of the Case

The Binkleys further argue that, because Haynsworth had chosen not to appeal Judge Kittredge's order, Haynsworth must accept the rulings in that order as the law of the case.[10] As with the Binkleys' argument concerning jurisdiction, we hold the question of notice regarding the existence of an easement is distinct from the question of notice as it relates to the scope and enforceability of the easement. We therefore hold that, although the law of the case doctrine may preclude Haynsworth from challenging Judge Kittredge's finding that the Binkleys did not have notice of the scope and enforceabili-

---

6. *Binkley*, 348 S.C. at 66, 558 S.E.2d at 906.

7. Rule 205, SCACR.

8. *Id.*

9. *Dorman v. Campbell*, 331 S.C. 179, 184, 500 S.E.2d 786, 789 (Ct.App. 1998) (emphasis added).

10. *See Priester v. Brabham*, 230 S.C. 201, 95 S.E.2d 167 (1956) (holding that, because there was no exception to the ruling of the court below, that ruling, right or wrong, was the law of the case):

ty of the easement, the doctrine does not prevent Haynsworth from raising the issue of when the Binkleys had notice of the existence of the easement.

### C. Judge Hall's Authority to Review Judge Kittredge's Order

■ The Binkleys argue that Judge Hall effectively reversed Judge Kittredge's prior order. We disagree.

■ Generally, one circuit court judge may not reverse or modify the order of another circuit court judge.[11] In the present case, the issues before Judge Kittredge and Judge Hall were easily distinguishable. Judge Kittredge determined that Rabon Creek's easement was ambiguous, that the homeowners had no actual or constructive notice of it, and that the doctrine of equitable estoppel limited Rabon Creek's enforcement rights. Judge Hall addressed the question of when the Binkleys knew or should have known that they had a potential claim for legal malpractice against Haynsworth and determined that they had at least inquiry notice of their claim when Haynsworth advised them that the easement existed.[12]

### D. Judicial Estoppel

■ The Binkleys argue that Haynsworth, as a party to and a participant in the litigation before Judge Kittredge "took the position that [a]ppellants and the other homeowners did not have notice that the flood easement burdened their property" and "should therefore be judicially estopped from adopting a conflicting position on the issue of notice for purposes of its summary judgment motion." In our view, however, the doctrine of judicial estoppel is inapplicable here.

■ "Judicial estoppel precludes a party from adopting a position in conflict with one earlier taken in the same or

---

11. *Enoree Baptist Church v. Fletcher,* 287 S.C. 602, 340 S.E.2d 546 (1986); *State ex rel. Medlock v. Love Shop, Ltd.,* 286 S.C. 486, 334 S.E.2d 528 (Ct.App.1985).

12. *See* S.C.Code Ann. § 15–3–535 (Supp.2001) (requiring that an action for personal injury "must be commenced within three years after the person knew or by the exercise of reasonable diligence should have known that he had a cause of action").

related litigation." [13] "The purpose or function of the doctrine is to protect the integrity of the judicial process or the integrity of courts rather than to protect litigants from allegedly improper or deceitful conduct by their adversaries." [14] Generally, the doctrine applies to only inconsistent statements of fact and not to conclusions of law or assertions of different legal theories.[15]

At the hearing before Judge Kittredge, Haynsworth took the position that the easement could not be enforced against the Binkleys and other homeowners because the easement documents were vague and ambiguous and because Rabon Creek failed to notify the homeowners that it claimed an easement to the top of the dam. When the case came before Judge Hall on Haynsworth's summary judgment motion, the question was not the interpretation of the easement but when the Binkleys had knowledge sufficient to put a reasonable person in their situation on notice of the existence of a possible claim against Haynsworth.

## II.  SUMMARY JUDGMENT

The Binkleys argue there was a question of fact as to when they were put on notice that they had a claim against Haynsworth and summary judgment was therefore inappropriate. We disagree.

### A.  Lot 8

■ The Binkleys do not dispute the premise that the applicable limitations period for their claim against Haynsworth is three years.[16] Moreover, they do not take issue with the principle that "actions must be commenced within three

---

**13.** *Hayne Fed. Credit Union v. Bailey,* 327 S.C. 242, 251, 489 S.E.2d 472, 477 (1997).

**14.** *Id.*

**15.** *Id.*

**16.** *See* S.C.Code Ann. § 15–3–530 (Supp.2001) (providing for a three-year limitations period for "an action upon a contract, obligation, or liability, express or implied").

years after the person knew or *by the exercise of reasonable diligence should have known* that he had a cause of action." [17]

Reviewing the evidence in the light most favorable to the Binkleys, we hold Judge Hall correctly determined that, as a matter of law, they knew or by the exercise of reasonable diligence should have known that they had a cause of action no later than November 4, 1991. Robert Binkley admitted he received Haynsworth's letter dated May 2, 1991, advising him and his wife about the existence of the easement in question. Moreover, the Binkleys knew their property was located near the spillway. Indeed, Robert Binkley took specific steps to ensure that the main living floor of the house would be above the floodplain level.

In addition, at the loan closing on November 4, 1991, the Binkleys signed a release indicating they had actual knowledge that their property was in a floodplain, but elected not to purchase flood insurance.

Without question, then, as early as May 1991, the Binkleys had inquiry notice of a possible claim against Haynsworth regarding the easement. By November 4, 1991, they had actual notice of the risk of flooding to their property.[18] The Binkleys had, then, the responsibility to investigate their claim once they had information that would place a reasonable person on notice that they had a possible cause of action.

Finally, we reject the Binkleys' argument that knowledge of the existence of the easement was insufficient to provide them with notice that they may have sustained damages. An easement by its very nature involves the right to encroach upon another's property.[19] Moreover, once a reason-

---

17. *Id.* § 15–3–535 (emphasis added).

18. We are unpersuaded by the Binkleys' argument regarding the difference between a flood easement and a floodplain. As noted in Haynsworth's brief, although the concepts are distinct, an easement may give someone the right to create a floodplain, which is what happened in this case. Haynsworth's notification to the Binkleys of the existence of the easement should have prompted them to investigate the situation further to determine what they would face if the easement were to be enforced.

19. *See Steele v. Williams*, 204 S.C. 124, 28 S.E.2d 644 (1944) (stating an easement is the right of one person to use the land of another for a specific purpose).

able person has reason to believe "that some right of his has been invaded or that some claim against another party might exist," [20] the requirement of reasonable diligence to investigate this information further takes precedence over the inability to ascertain the amount of damages or even the possibility that damages may be forthcoming at all.[21]

## B.  Lot 9

The Binkleys state in their brief that all the arguments advanced regarding Lot 8 apply equally to Lot 9. Because we have upheld Judge Hall's determination that the Binkleys' malpractice action regarding Lot 8 was barred by the statute of limitations, we likewise hold their action concerning Lot 9 was untimely as well.

**AFFIRMED.**

HOWARD and SHULER, JJ., concur.

---

**20.** *Dorman,* 331 S.C. at 184, 500 S.E.2d at 789.

**21.** *See Dean v. Ruscon Corp.,* 321 S.C. 360, 364, 468 S.E.2d 645, 647 (1996) ("[T]he fact that the injured party may not comprehend the full extent of the damage is immaterial.").