THE STATE OF SOUTH CAROLINA

THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED 
 ON IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
 In The Court of Appeals
 
 
 
 
 Landmark 501(C)(9) Trust Agreement For The Landmark Group, by and through 
 its trustees, Michael P. Dunlap, Steven D. Hale, and Roger K. Meagher, 
 Appellants, 
 
 
 

v.
 
 
 
 
 Pierce, Couch, Hendrickson, Baysinger & Green; H. Blanton Brown 
 & Associates, P.C.; Brown & Sanger, PC; and Young Clement Rivers 
 & Tisdale, LLP, Respondents.
 
 
 

Appeal From Charleston County
  A. Victor Rawl, Circuit Court Judge

Unpublished Opinion No. 2004-UP-371
 Heard April 6, 2004  Filed June 17, 2004

AFFIRMED

 
 
 
 
 A. Camden Lewis and Peter D. Protopapas, both of Columbia, for 
 Appellants.                                                                                            
 
 Carl E. Pierce, II, Joseph C. Wilson, IV, M. Dawes Cooke, Jr., all 
 of Charleston; Susan P. McWilliams and Nikole Setzler Mergo, both of 
 Columbia, for Respondents.    
 
 
 

PER CURIAM: Landmark 501(C)(9) Trust Agreement 
 for the Landmark Group, by and through its trustees, Michael P. Dunlap, Steven 
 D. Hale, and Roger K. Meagher (Appellants) brought this legal malpractice 
 action against Pierce, Couch, Hendrickson, Baysinger & Green; H. Blanton 
 Brown & Associates, P.C.; Brown & Sanger, P.C.; and Young Clement Rivers 
 & Tisdale, LLP (Respondents). Appellants allege that Respondents were 
 negligent in pursuing a case that lacked legal merit, or in the alternative, 
 improperly handled the litigation. The trial judge granted Respondents motions 
 for summary judgment, finding the claims were barred by the statute of limitations, 
 collateral estoppel, and res judicata. We affirm. 
 [1] 
FACTS 
The Landmark group owned and managed golf resorts 
 across the country. In 1988, Landmarks parent company, Clock Tower Place Investments, 
 Ltd., established a self-funded health and welfare plan for its employees called 
 the Landmark Group Insurance Program  (the Plan). The Plan was set up as an 
 Employee Welfare Benefit Plan in accordance with ERISA.  In 1991, Landmark declared 
 bankruptcy and was soon controlled by the Resolution Trust Corporation (RTC).  
 RTC created the Landmark Trust (the Trust) to oversee the Plan during the 
 bankruptcy and receivership.  In 1993, RTC hired Gloria Robinson as the Plan 
 administrator and appointed Michael Welch and V. Jackson Carney (Original Trustees) 
 as the trustees of the Trust. Robinson eventually learned that Landmark had 
 paid more than one million dollars in benefits out of the Plan to certain unqualified, 
 independent contractors [2] and 
 their dependents. 
In November of 1995, the Trust submitted 
 a case memorandum to RTC requesting the allocation of funds to Clock Tower to 
 repay the amount of the ineligible claims to the Trust.  RTC denied the claim.  
 The following month, Robinson and the Original Trustees hired Respondents and 
 filed an action (Robinson I) against Landmark, Clock Tower, the FDIC, and 
 RTC seeking reimbursement for the payments to the ineligible independent contractors. 
 Clock Tower counterclaimed against the Original Trustees on behalf of the Trust, 
 alleging Robinson and the Original Trustees breached their fiduciary duty and 
 wasted the Trusts assets by hiring Respondents to pursue Robinson I.  On March 
 28, 1996, the trial court dismissed Robinsons  and the Original Trustees claims 
 for lack of subject matter jurisdiction.  Clock Tower continued to pursue its 
 counterclaims. [3]   On April 
 25, 1996, Clock Tower informed the Original Trustees they would be removed effective 
 May 26, 1996.  Clock Tower then replaced the Original Trustees with Michael 
 Dunlap, Steven Hale, and Roger Meagher (Appellant Trustees).  Dunlap was appointed 
 on March 8, 1996, and Hale and Meagher on June 1, 1996.  The Appellant Trustees 
 are former employees of the FDIC.  
On June 13, 1996, Appellant Trustees 
 fired Respondents. In April of 1997, Clock Tower, acting on behalf of the Trust 
 and with assistance from the Appellant Trustees, moved to disgorge attorneys 
 fees from the Original Trustees and Respondents.  The trial court granted the 
 motion in part and ordered Respondents to return all fees unused as of June 
 13, 1996.  On August 31, 1997, the Plan was terminated due to lack of employees 
 or Plan participants.  
Appellants filed the current action on May 28, 1999.  They alleged that Respondents 
 were negligent and performed unnecessary work. Appellants sought to disgorge 
 the fees paid to Respondents.  Respondents filed motions for summary judgment.  
 At the August 10, 2001 hearing, the trial court granted Respondents motions, 
 deeming Appellants claim barred by the statute of limitations, collateral estoppel 
 and res judicata.  This appeal followed.
ISSUES

 
 I.  
 Did the trial court err in finding that this action is barred 
 under the statute of limitations?
 
 
 II. 
 Did the trial court err in finding that this action is barred 
 under res judicata because of the previous action to disgorge payments?
 
 
 III. 
 Did the trial court err in finding this action is barred under 
 the settlement and release from the previous action?
 
 
 IV.
 Did the trial court ignore evidence of Appellants damages?
 

STANDARD OF REVIEW
When reviewing the grant of a summary judgment motion, the appellate court 
 applies the same standard which governs the trial court under Rule 56(c), SCRCP: 
 summary judgment is proper when there is no genuine issue as to any material 
 fact and the moving party is entitled to judgment as a matter of law.  Baril 
 v. Aiken Regl Med. Ctr., 352 S.C. 271, 279, 573 S.E.2d 830, 835 (Ct. App. 
 2002).  Summary judgment is appropriate where the pleadings, depositions, answers 
 to interrogatories, and admissions on file, together with the affidavits, if 
 any, show that there is no genuine issue as to any material fact and that the 
 moving party is entitled to judgment as a matter of law.  Id. at 280, 
 573 S.E.2d at 835.
LAW/ANALYSIS  
Appellants argue that the trial court erred in finding that the 
 statute of limitations had expired prior to the commencement of this action.  
 We disagree.  
Under Rule 3(b), SCRCP, an action is commenced, and the statute of limitations 
 tolled, by filing and serving the summons and complaint.  The statute of limitations 
 upon a contract, obligation, or liability, express or implied expires after 
 three years.  S.C. Code Ann. § 15-3-530 (Supp. 2003). The statute of limitations 
 on a negligence claim accrues at the time of the negligence or when facts and 
 circumstances would put a person of common knowledge on notice of a possible 
 claim against another party.  § 15-3-535.  Under the discovery rule, an action 
 accrues when the injury is discovered or should have been discovered by reasonable 
 diligence.  Strong v. Univ. of S.C. Sch. of Med., 316 S.C. 189, 190, 
 465 S.E.2d 850, 852 (1994).  The injured party is not required to comprehend 
 the full extent of the damage or the exact nature of the wrong to start the 
 running of the statute.  Dean v. Ruscon Corp., 321 S.C. 360, 364, 468 
 S.E.2d 645, 647 (1996).  All that is required is that the party have inquiry 
 notice of a possible claim.  Binkley v. Burry, 352 S.C. 286, 297, 573 
 S.E.2d 838, 844 (Ct. App. 2002).  
The complaint in this action was served on Respondents on May 28, 1999, but 
 at least one trustee, Michael Dunlap, had constructive notice of a claim prior 
 to May 28, 1996 because Clock Towers counterclaim was a matter of public record 
 as of February 1996. See Berry v. McLeod, 328 S.C. 435, 445, 492 
 S.E.2d 794, 799 (Ct. App. 1997) (An individual on inquiry or constructive notice 
 is held to be on notice of the contents of documents filed in conformity with 
 applicable statutory law, which an inquiry would have revealed.). Therefore, 
 the trial judge was correct to rule that this action is barred by the statute 
 of limitations.
In addition to constructive notice, Dunlap also had actual notice. He had been 
 an FDIC employee from 1990 to February 1996 and became a trustee on March 8, 
 1996. He admits that he knew Robinson I was pending and could have obtained 
 the pleadings at any time. [4]   
 Moreover, Dunlap was copied with Clock Towers letter terminating the Original 
 Trustees and barring them from making further payments to Respondents.  He was 
 also copied with the May 1, 1996 letter informing the Original Trustees they 
 would be held personally accountable for the payments to Respondents.  Additionally, 
 on May 23, 1996, Respondents actually provided Dunlap with a copy of Clock Towers 
 Answer and Counterclaim.  On May 26, 1996, the Original Trustees were removed 
 and Dunlap became the sole trustee.  
We find that Dunlap, as a trustee, had the knowledge and ability to act against 
 Respondents prior to May 28, 1996. That knowledge is imputed to the other trustees. 
 See Dorman v. Campbell, 331 S.C. 179, 185, 500 S.E.2d 786, 789 
 (Ct. App. 1998) (affirming that a principal is affected with . . . knowledge 
 of all [information] of which his agent receives notice while acting within 
 the scope of his authority) (citing Crystal Ice Co. of Columbia, Inc. v. 
 First Colonial Corp., 273 S.C. 306, 309, 257 S.E.2d 496, 497 (1979)). Therefore, 
 this action cannot lie.
As Appellants action is time-barred, we do not reach the remaining issues 
 on appeal. [5] 
CONCLUSION  
Based on the above, we find that the trial court properly granted Respondents 
 motions for summary judgment.  Accordingly, the decision is  
AFFIRMED.
HEARN, C.J., and ANDERSON and BEATTY, JJ., concur.

 
 [1] We decide this case without oral argument pursuant 
 to Rule 215, SCACR.

 
 [2] The independent contractors were golf pros for 
 the resorts.

 
 [3] On September 1, 2000, Clock Tower, 
 Appellants, and the Original Trustees entered into a settlement agreement 
 that released the Original Trustees from any liability in connection with 
 payments to Respondents and acknowledged that the Original Trustees fulfilled 
 their fiduciary obligations to the Trust and the Plan.  

 
 [4] The trial court dismissed the Original Trustees 
 claims in Robinson I on March 28, 1996, but that was after Dunlap had become 
 a trustee.

 
 [5] See Futch v. McAllister Towing of Georgetown, 
 Inc., 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (explaining that appellate 
 courts need not review remaining issues when the disposition of a prior issue 
 is dispositive).